June Term,
1860.

BRANDEIS
v.
NEUSTADTL.

| 13 | 142 |
|----|-----|
| 74 | 185 |
| 74 | 187 |
| 13 | 142 |
| 76 | 435 |
| 13 | 142 |
| 82 | 190 |
| 13 | 142 |
| 89 | 630 |
| 13 | 142 |
| 90 | 101 |
| 13 | 142 |
| 95 | 99 |
| 13 | 142 |
| 100 | 591 |
| 18 | 142 |
| 107 | 163 |

## BRANDEIS VS. NEUSTADTL.

A parol contract was made for the purchase of land, and a portion of the purchase money was paid, but there was *no part performance.* The buyer sued to recover back the money paid, alleging the parol contract and the refusal and inability of the seller to make him a good title. The seller in his answer admitted the contract, averred his readiness and ability to execute it on his part, and asked a specific performance: *Held,* that under the statute (chap. 106, sec. 8), which declares that every contract "for the sale of any lands or interest in lands shall be *void* unless the contract, or some note or memorandum thereof, &c., be in writing," a verbal contract for the sale of land is in all respects a nullity, unless there has been a *part performance* of it within the old equity rule upon the subject, and specific performance thereof could not be decreed.

DIXON, C. J. was inclined to think that the purchaser in such case (where there has been no part performance), is entitled, after a demand for the repayment or restoration by the seller of the money or property paid or delivered on the contract, and a reasonable time given him for that purpose, or after a refusal by him to repay the money or restore the property, to maintain an action against the seller to recover back what he has paid, but this point, being unnecessary to the determination of the case, was not decided by the court.

Mere payment of a portion of the purchase money, unaccompanied by any other act, is not such a part performance of a parol contract for the purchase of land, as will take it out of the statute.

Several months after the making of a verbal contract for the purchase of land, the buyer, who had paid part of the purchase money, requested the seller to execute a deed in pursuance of the contract, and the seller promised to make him a clear title within a specified time or pay back the money, but did not execute the deed as promised: *Held,* that the previous payment of the money upon the void verbal agreement formed a sufficient consideration for the promise to repay it, and an action might be maintained for its recovery.

A plaintiff, upon affidavit that his complaint contained statements which were untrue and a demand for a kind of relief which he had not intended to ask, and that the mistake arose on account of his inability, from ignorance of our language, to understand the complaint when it was read to him, and sworn to by him, obtained leave of court to file an amended complaint, containing a different statement of the facts and demanding different relief: *Held,* that he ought not to be prejudiced at the hearing, by anything contained in the original complaint, unless there was something in the evidence to show that the affidavit upon which the amendment was allowed, was untrue.

APPEAL from the Circuit Court for *Milwaukee* County.
The complaint alleged that on the 10th day of September, 1857, the defendant agreed with the plaintiff to convey to him, by warranty deed, a clear title to a certain lot in Milwaukee, for $1000, payable $200 in hand and the balance in four annual instalments with interest, to be secured by a mortgage on the lot: that the plaintiff paid the $200 to the

June Term, 1860.

BRANDEIS v. NEUSTADTL.

defendant, who then signed and delivered to the plaintiff his memorandum in writing of said agreement, acknowledging the receipt of said money, and the plaintiff took possession of said lot; that the defendant has not a perfect title to the lot; that on the 13th of March, 1858, the defendant agreed within two weeks from that time, either to make the title clear and deliver the deed or to return the $200: that he had refused, although requested, to do either, and that the plaintiff on his part is ready to perform his agreement. The plaintiff demanded judgment that the defendant should within a short time, to be fixed by the court, convey to him by warranty deed a perfect title to said lot, or in default thereof pay to him said sum of $200, with interest, &c. On the 24th of July, 1858, the plaintiff, upon affidavit that he was imperfectly acquainted with the English language, and that he did not fully understand the complaint when it was read to him and sworn to by him, and that it was incorrect in various particulars mentioned in the affidavit, and especially in the allegations that there was a written memorandum of the agreement, and that he was still willing to comply with the contract on his part, and still desired a specific performance of it, obtained leave to file an amended complaint. The amended complaint alleged the making of the parol contract as stated in the original complaint, and the payment of the $200, and the execution by the defendant of the following memorandum: " Mr. Jacob Brandeis, I confirm the receipt of two hundred dollars as payment on account of lot number 6, in block 118 in the second ward of the city of Milwaukee. September 10, '57. ISAAC NEUSTADTL"; that the defendant's title to said lot was not and never had been clear; that the contract was that a clear title should be made to him in a few days; that the opportunity to sell the lot, in view of which he made the contract, had been lost by reason of the defendant's failure to fulfill his agreement; that the lot had greatly depreciated in value, and was then worth much less than the stipulated price. It alleged also the promise by the defendant, on the 13th of March, 1858, to convey to the plaintiff a clear title to the lot within two weeks or to repay the $200, and his refusal to do either, and

demanded judgment for $200, together with damages, &c. The answer of the defendant to the amended complaint was, in substance, that he did agree to sell and convey said lot by warranty deed to the plaintiff for the price mentioned in the complaint, payable as therein stated; that he received from the plaintiff $200 of the purchase money, and gave the plaintiff a receipt for it as therein stated; that the agreement was verbal, and no note or memorandum thereof in writing was ever signed by the parties; that he is informed that plaintiff took possession of the lot under said agreement; that soon after the making of said contract, he was informed for the first time that there were some incumbrances on the lot, but that he had within a short time afterwards removed the same and become seized in fee of the lot, free from all incumbrances; that before and since the 13th of March, 1858, he had offered to execute to the plaintiff a warranty deed which would have vested in him a clear title to said lot, which the plaintiff refused to accept. The answer denied that the defendant had promised, on the 13th of March, 1858, or at any other time, to convey to the plaintiff a clear title to said lot or repay the sum of $200; and demanded judgment that the plaintiff accept from the defendant a warranty deed of the lot, and that he execute to the defendant his notes for the unpaid purchase money and a mortgage upon the lot to secure their payment. The plaintiff filed a reply denying that he ever took possession. The pleadings were all verified.

The testimony in the case tended to show that at the time the contract for the sale of the lot was made, the defendant's ti⁺   ᚐs imperfect, but that he used reasonable diligence to          the defects, and early in July, 1858, had become a        nake a good title to the lot. The plaintiff and three oth₍       ᚐesses testified that in March, 1858, the defendant promᵢ    to make the plaintiff a clear title to the lot within two weeᵢ , or repay him the $200. The defendant testified that he did not make such promise. There was proof that the plaintiff had never taken possession of the lot.

The decision of the court stated the facts found by the judge and his conclusions of law, substantially as follows: "1st. The original summons in this action was for the relief demand-

ed in the complaint served with it. That relief wás a specific performance of a parol contract which had been performed in part; a judgment was asked compelling the defendant to convey to the plaintiff a clear title to the premises in litigation, or in default thereof to refund the purchase money which had been paid. 2d. Near the end of July, 1858, the plaintiff amended his complaint so as to make his action a claim to recover back' the money paid by him on the contract. 3d. Previous to this change in the nature of the action, the defendant's title to the premises in question had been made perfect, and I think it is clear that from the time the defendant learned his title was imperfect, he used all reasonable diligence to remove the defects. I think these facts prevent a judgment for the plaintiff. He insisted on a conveyance up to the time he amended his pleading, and refused to take one when the defendant was capable of conveying a good title. When the defendant has been to the trouble and expense of perfecting his title so that he might comply with the demands of the plaintiff, the latter abandons his demand for a deed and asks for a return of his money. No such advantage as this can be attained by merely amending a complaint. The defendant can take a judgment for the specific performance demanded in his counter-claim, or the complaint may be dismissed without prejudice to a new action to be brought by the defendant for that purpose." Judgment for specific performance. The plaintiff excepted to the decision and judgment, and it was stipulated that all questions of law and fact raised by the pleadings, might be reviewed upon the pleadings and evidence, on appeal.

*Halbert E. Paine*,. for appellant, as to the effect of the statute which declares a parol contract for the purchase of land to be void, cited *Miller vs. Pelletier*, 4 Edw. Ch., 102; *Church vs. Bigelow*, 16 Wend., 29; *Vielie vs. Osgood*, 8 Barb., 130; *Davis vs. Townsend*, 10 id., 333; *Coles vs. Bowne*, 10 Paige, 526; *Champlin vs. Parish*, 11 id., 405, 431; *Worrall vs. Munn*, 1 Seld., 229; *Johnson vs. Meeker*, 1 Wis., 436; *Gorsuth vs. Butterfield*, 2 id., 237.

As to the right to recover back money paid on a void or

*Margin note:* June Term, 1860.

BRANDEIS
v.
NEUSTADTL.

illegal contract, he cited *Ins. Co. vs. Kip*, 8 Cow., 20; *Munt vs. Stokes*, 4 T. R., 562; Comyn on Con., 424, *et seq.*; *Abbott vs. Draper*, 4 Denio, 51; *Collier vs. Coates*, 17 Barb., 471; *Dougherty vs. Goggin*, 1 J. J. Marsh., 373; *Bedinger vs. Whittamore*, 2 id., 552; *Rice vs. Peet*, 15 John., 503; *Fowler vs. Shearer*, 7 Mass., 14 and 31.

*Small & Cogswell*, for respondents:

Plaintiff cannot recover back the money he has paid, the defendant being in no default. If he endeavors to rescind the contract, it must be with the penalty of abandoning what was received in good faith by the party desirous of fulfilling the contract. *Shaw vs. Shaw*, 6 Vt., 69; *Dowdle vs. Camp*, 12 Johns., 451; *Lane vs. Shackford*, 5 N. H., 130; *Rounds vs. Baxter*, 4 Greenl., 454; *Green vs. Green*, 9 Cow., 46; *Ketchum vs. Evertson*, 13 Johns., 359; *Alpass vs. Watkins*, 8 T. R., 516.

January 2. *By the Court*, DIXON, C. J. There is no doubt that many cases may exist where the purchaser of real estate under a binding executory contract of sale, has a choice among several modes of redress afforded by law against the seller, for a breach of such contract. He may go into a court of equity and compel a specific performance, or sue at law upon the contract and recover the damages which he has sustained; or he may abandon it altogether, and bring his action for the price paid and interest, as for money had and received to his use. But I doubt whether under a statute like our own, all these remedies can at any time be said to be open to the purchaser under a verbal or unwritten contract of purchase, except in the single instance of a part performance, which, by the terms of the statute itself, is exempted from its operation. Indeed I am at a total loss to discover any sound or rational principle upon which either of the two first courses can be adopted or sustained in cases of verbal contracts, save such as have been partly performed, and then only the first or equitable proceeding to compel specific performance. There is a plain and most important difference between the phraseology of our statute and that of the English statute, 29 Car. II., and of the statutes of most of the states of the

union, upon this subject. The fourth section of the English statute provides, among other things, that no action shall be brought upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized. The same or similar language, "no action shall be brought whereby, &c.," or that which is of like effect, "no evidence of any such contract shall be competent unless it be in writing and signed by the party to be charged, or his lawfully authorized agent," occurs in the statutes of all the states excepting five, among which are Wisconsin and New York. In the latter state, a statute in terms like the English prevailed down to the revision in 1830, when it was abolished, and the present statute, of which ours is a transcript, was enacted.

Our statute is entirely silent as to the bringing or maintaining of actions upon such contracts, or the kind of evidence by which they shall be established, but the 8th section (chap. 106), declares that every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, *shall be void*, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made. By the 10th section it is enacted that nothing therein contained shall be construed to abridge the powers of courts *to compel the specific performance of agreements, in cases of part performance of such agreements.*

By the common law, such contracts were valid and obligatory, and actions could be maintained upon them in courts of law as well as equity. The statute of England, and those which are copied after it, do not touch the contracts embraced in them, nor declare that they shall be illegal or void unless put in writing. They do not affect their substance, but merely declare that no action shall be brought upon them unless they are in writing, and signed by the party to be charged ; or, what amounts to the same thing, they prescribe as a rule of evidence, that in all actions where an enforce-

June Term,
1860.

Brandeis
v.
Neustadtl.

ment of them is sought, oral proof of them shall not be admitted. Accordingly where those statutes prevail, contracts which were legal and actionable before the statute, are legal still, and they may be acted on and enforced by the courts whenever the proofs consist of such writings as the statutes require. But the effect of statutes which reach contracts themselves, and make them void, is widely different from that of those which extend to the remedy only, and make them simply not actionable. It may be very true that in many cases, the legal effect of statutes of the latter kind is the same as if they had declared the promises or agreements void; but in many others, the consequences of considering them void, and of considering them simply not actionable, are very different. This distinction might be illustrated by reference to a great number of cases to be found in the books, but in none more aptly and pointedly than in two which were heretofore decided in this court, and which arose under two statutes formerly in force, regulating the sale of spirituous and intoxicating liquors. In the first case (*Johnson vs. Meeker*, 1 Wis., 436), where the cause of action, being two promissory notes given for the price of a quantity of liquors purchased by the makers, accrued during the continuance of the statute of 1849, but the suit was commenced after its repeal, it was determined that the action might be maintained, notwithstanding the repealed statute, which was in force when the liquors were sold and the notes executed, provided that no suits for liquor bills should be entertained by any of the courts of the state; and that whenever it should appear to any court before which a suit might be pending on a promissory note, that such note was given, in whole or in part, for liquor bills, such court should immediately dismiss such suit at the cost of the plaintiff. The statute did not make the notes void, but suspended the remedy merely, which, by its repeal, was at once restored. The other (*Gorsuth vs. Butterfield*, 2 Wis., 237) was a transaction of a similar character, which took place under the act of 1850. The action was commenced after the act was repealed, upon a promissory note given while it was in force, for a retail liquor bill. The act declared that all notes, accounts

or evidences of debt, given for such bills, should be void. It was held that as it did not affect the remedy simply but the cause of action itself, by declaring that it should have no legal existence, the legislature could not, by a repeal of the law or otherwise, restore it, or give vitality to the supposed contract out of which it arose.

A contract declared void by statute, is in all respects a nullity. It cannot for any purpose be considered as ever having had a being or existence. Excepting the single case reserved from its operation, all verbal contracts for the sale of lands or any interest in them, are, under our statute, as if no words had ever been spoken concerning them, and no negotiations whatever been had between the parties; and I confess my utter inability to perceive, how, upon any acknowledged principle of jurisprudence, they can be treated for any purpose as ever having been made at all. If in the construction of this statute, we are to be governed by the same principles which governed the court in the decision of *Gorsuth vs. Butterfield,* it is evidently quite useless for any party to ask us specifically to enforce, or to give damages for the alleged breach of any such contract, except it likewise be made to appear that it had been partially performed, within the old equity rule on the subject; and then we can only compel a performance according to the reservation of power contained in the statute. If I am right in this position—and my judgment will permit me to take no other—it furnishes a complete answer to all those taken by the counsel for the respondent for the purpose of sustaining the judgment of the circuit court and establishing the respondent's claim to a specific performance, as set forth in his answer. In this view, it makes no difference whether the original bargain was for a clear title or only for a warranty deed. It makes no difference whether the plaintiff acted in good or bad faith in abandoning his first form of action, in which he insisted upon a conveyance, and in changing it, by amendment, into a suit to recover back the money which he had paid. Nor is the demand for such relief aided by the consideration that the parol contract is definitely stated and admitted in the pleadings of both parties, and the statute not

urged as a bar ; nor by the fact, if it be conceded, that the respondent has been guilty of no laches, bad faith, nor negligence ; nor that he has offered to give a warranty deed, and that time was not of the essence of the agreement. It is immaterial for what purpose the plaintiff desired to make the purchase, and whether or not he was aware of the defects in the respondent's title at the time the conveyance was made. All these and other like considerations, which might be very properly urged before a court sitting to adjudicate upon the rights of parties under a statute like the English, can be of no avail here. The simple answer to them is, that whilst under the English and other similar statutes, there is a legal contract—one which the party is morally and conscientiously bound to perform—under ours there is none— nothing which creates any right or imposes any obligation or duty whatever; and that all that the parties may say or do, short of reducing their agreement to writing, expressing the consideration, and causing it to be subscribed by the party making the sale, affords the court no solid ground, or colorable pretext even, for noticing it or knowing that anything of the kind has ever transpired. Under the former statute, which affects the remedy or evidence merely, there is some plausibility in the argument that it is designed to guard against the frauds and perjuries occasioned by the free admission of parol evidence, and that where the contract is confessed in the answer or other pleading of the defendant or party to be charged, the danger is removed ; that the confession dispenses with the necessity of parol or other proof, and takes away the temptation to commit either, and makes a case not within the mischief which the legislature intended to obviate. There is, likewise, some plausibility in the further reason sometimes given, that the agreement, although originally by parol, is now in part evidenced by writing, under the signature of the party, which is a compliance with the terms of the statute. However sound this reasoning, which has met with strong disapprobation on the part of some of the greatest masters of the English and American equity system, may be conceded to be, it clearly has no application to a statute like ours. When the statute

does not disturb or annul the agreement, but suspends the remedy until written evidence of it, signed by the party to be charged, shall be produced before the court, there may be some reason for saying that his written admission, made and exhibited to the court in the form of a pleading, satisfies it. It then becomes legal evidence of a legal contract. But there is obviously no propriety in saying the same thing of a void contract. No matter by what evidence such contract may be established, aside from the production of the written document itself, it is nevertheless void. It is still a nonentity, which can neither be strengthened nor weakened by the admission of the parties, and to which the court, if governed by the legislative will and the well settled rules of the law, is powerless to impart life or vigor. It is all alike evidence of a void agreement, and the stronger and more satisfactory the proof, the more firmly should the court be convinced of its inability to interfere or aid in its enforcement. It is then not a question of the evidence of, or remedy upon, a previously existing legal agreement, but of power on the part of the court to create and enforce one, between persons who, in contemplation of law, have never entered into any agreement at all. I do not believe that courts possess any such power, and if I did, or if it were a mere matter of policy and expediency, my respect for the harmony and consistency of legal principles, as well as what I conceive to be the lawful rights of suitors, would never permit me to exercise it. I do not believe that courts have any legislative power, by which they are enabled to dispense with the plain and positive provisions of statutes, which the legislature may constitutionally enact. Such statutes are guides for their action as well as for that of the whole people of the state. I cannot, therefore, assent to the position, that a party must insist on the statute in his complaint, or answer, in order to escape the performance of a void agreement. If he states facts which, when admitted or proved, show it to be void, that is sufficient. The facts being thus brought to its attention, it is presumed that the court knows the law, and will see that its mandates are complied with. If the parties are anxious to abide by such agreement, they have no need of the assistance of the court;

but if they still desire that assistance, when it is so entirely unnecessary, they have but to comply with the statutory requirement, and the powers of the court will be successfully invoked. It can make no exceptions where none are made by the statute.

The only circumstance which will take such agreement out of the sweeping operation of the statute, is that which the statute itself declares shall have that effect, and which has already been adverted to, viz., a part performance of it. What constitutes such part performance has been already determined by this court in the case of *Blanchard v. McDougal*, 6 Wis., 167. It is there said that "mere payment of a portion of the purchase money, unaccompanied by any other act, is not sufficient. But where possession is delivered and continued, upon payment of a considerable part of the purchase money, it will take the case out of the statute; for the reason that it would perpetrate a fraud upon the vendee to accept a portion of the contract price from him, induce him to move his household goods upon the premises, or otherwise incur trouble or expense, and perhaps improve the same, and then to repudiate the contract because it was not in writing. The object of the statute was to prevent frauds and perjuries, not to encourage them. Hence the delivery of possession, in addition to the payment of a portion of the purchase money, has been held to be essential to the claim for specific performance, and for obvious reasons." And I may here add, that although these are the reasons assigned by the English courts of chancery, for creating an exception to a statute which makes none, there is, in my judgment, a much better and more substantial reason for allowing part performance to take a case out of our statute, which is because the statute itself declares that it may have that effect. It is not with us, as with them, a judicial, but a statutory exception. It is not legislation on the part of courts against the positive provisions of a statute, but a compliance with them, and with the plainly expressed will of the legislature; and hence is not subject to the strictures of Lord Redesdale in *Lindsay vs. Lynch*, 2 Sch. and Lefr., 4, upon the doctrines of the English courts upon the same sub-

ject, which are quoted with much apparent approbation by Judge STORY in §766 of vol. 2, of his Equity Jurisprudence. A correct use of language would require us to say, that part performance shows that the contract is not within, rather than that it takes it out of, the operation of the statute. In this case it is admitted that the purchaser has not possession of the premises in question, and therefore a specific performance cannot be decreed for or against either party.

This view of the case renders it unnecessary for us to comment upon the supposed effect of the admissions contained in the plaintiff's original complaint. But I may be permitted to say that if it were a case where such admissions might have been made to operate injuriously to him, in my opinion they should not. The change, or amendment, was allowed by the court upon his sworn statement of facts, and if such statement was then satisfactory, why should it not be afterwards, unless upon the trial it turned out to be untrue? The affidavit itself discloses nothing which should cause suspicion, except it be the singularity of the mistake that occurred, which is fairly and reasonably explained. The testimony taken before the commissioner, and read at the hearing, fully corroborates it, and shows, that as to some of the averments of the original verified complaint, he was either laboring under a mistake, or else he was wilfully and corruptly false. He swears without contradiction or impeachment, that so far as he was concerned, they were introduced through misapprehension on the part of his counsel, and that he did not know that they were contained in the complaint. Why should he be prejudiced by such an innocent mistake? Clearly no good reason can be given.

The next and most difficult question presented in cases of this kind, is as to the right of the purchaser under such void agreement, to sue for and recover back from the seller, the money or other property which he has paid. It is insisted by the counsel for the respondent, that so long as the seller is in no default, and is ready and willing to perform the agreement on his part, according as it is fulfilled by the purchaser, the latter is not at liberty to abandon it and recover back what he has paid. This is certainly the rule un

der the English statute, and those which are fashioned after it. But I very much doubt whether the same rule ought to be applied under ours. It seems to me that the same objection exists to its application, as to the application of that by which, under the former, oral agreements admitted by the pleadings, are specifically enforced when the statute is not relied upon as a bar. The decision of this question is not, as will be presently seen, strictly necessary to a determination of the controversy between these parties, and therefore we reserve it. But for myself I may say that my present impression is, that the purchaser under such circumstances is entitled, after a demand for the repayment or restoration by the seller of the money or property paid or delivered, and a reasonable time given him for that purpose, or after a refusal by him to repay the money or restore the property, to maintain such action. The agreement being void, it is money paid or property delivered without any consideration whatever, from which the law implies a promise of repayment or redelivery, unless the transaction is interdicted by some rule of public policy or sound morals. And I think it is not. The general rule is, that money paid upon an illegal consideration, or expended in an illegal or immoral transaction, cannot be recovered back. But here it is neither. There is nothing criminal or wrong in either. The consideration is not illegal, because the sale of lands by one person to another is perfectly lawful and proper. Such sale is not only not prohibited by the statute, but on the contrary, its legality is expressly recognized by the affirmance of contracts for that purpose, provided only they are evidenced in the way pointed out by it. The transaction is not immoral for the same reasons. The defect consists in the failure or neglect of the parties to go far enough in the performance of that which they may legally do, instead of their attempting to perform what the law forbids. The parol bargain itself is not only innocent but serviceable, as it must precede the written consummation of almost all transactions of the kind. But where they stop with the parol bargain, the statute declares the contract void, not because it is illegal, immoral or fraudulent, but because they omitted to take another step, made neces-

sary to its validity in law. There being neither fraud nor illegality, why should the purchaser not be permitted to recover back the money which he has paid? The case, it seems to me, would not fall within any settled principle which would cut him off. The parol contract, being void, furnishes no consideration for the payment. A consideration, to be sufficient, must be either a benefit to one party or a damage to the other. The purchaser can derive no benefit from the supposed contract. Nothing passes to him by virtue of it; he obtains no interest in the land, and no promise or agreement on the part of the seller to convey him any; and he can never derive any advantage from what has transpired, except it be as a matter of favor on the seller's part. The latter suffers no damage by what has happened. He has lost or parted with nothing. His interest, control and ownership of the land remain the same, and he is at liberty to do with it just as he might have done before. It appears to me that such a case must come directly within the authority of *Fowler vs. Shearer* and *Shearer vs. Fowler*, 7 Mass., 14 and 31, and other cases hereafter cited. The case of *Tollenson vs. Gunderson*, in our own court (1 Wis., 113), seems also equally in point.

The reason given for not allowing the purchaser under the English statute, and those like it, to repudiate the agreement and recover back what he has paid, so long as the seller is in no default, is very obvious. But it cannot be given here. It is that the agreement is not void but voidable, or, to speak more correctly, not actionable. *Sims vs. Hutchins*, 8 S. & M., 328; *Newton vs. Swazey*, 8 N. H., 9; *Shaw vs. Shaw*, 6 Vt., 69; *Philbrook vs. Belknap*, id., 383; *Dougherty vs. Goggin*, 1 J. J. Marsh, 373; *Bedinger vs. Whittamore*, 2 id., 552; and *Minns vs. Morse*, 15 O., 568. The repeal of the statute in such case would at once enable the purchaser to maintain his action upon the agreement. With us it is otherwise. Its repeal would leave him in no better situation than formerly. There is in that case a valid living contract between the parties, and though the remedy be suspended, it binds the conscience, and, until it has been broken, constitutes a sufficient consideration for the payment of the money. There being

June Term.
1860.

BRANDEIS
v.
NEUSTADTL.

thus a good consideration, if the purchaser chooses to rely upon the honor of the seller for the performance of his contract, instead of putting it in such form that the courts can enforce it, it is no injustice to say to him that he shall not ignore it, at least until that honor has been violated. There is a contract both in law and in fact, to which the payment may be and is in reality applied, and it would be a hardship, so long as the seller is able and willing to comply, to permit the purchaser to deny it and turn around and treat him as a borrower. But under our statute there is no contract; nothing which can be the foundation of any legal or equitable obligation; and how can the court create one? How can it say to the supposed purchaser that he must buy and pay for a tract of land, simply because the imagined seller avers himself to be ready and willing to sell and convey, when it is legally informed that no agreement to that effect was ever made between them? How can it say that the money which has passed was a payment, when it appears that there was no consideration or contract to which it could be applied? And how can it determine that the seller has abided by his agreement, and is able and willing to perform, when it is shown that he made no agreement, and that there was nothing which he promised to do? To me these things seem logically impossible. So far as the law is concerned, the whole affair is a mere false show, except the delivery of the money. It finds one party in the unexplained possession of the money of another, which he knowingly received without any legal equivalent, and not as a gift, and which he has no legal or equitable right to retain; and why should he not refund?

I am aware that the opposite doctrine is maintained in *Dowdle vs. Camp*, 12 John., 451, though a different opinion is intimated in *Rice vs. Peet*, 15 id., 503. But both cases arose under the old statute of New York, and the former is therefore undoubtedly the correct law. I know also that it has been indirectly sustained in *Abbott vs. Draper*, 4 Denio, 51, and fully decided by the present supreme court in *Collier vs. Coates*, 17 Barb., 471, both of which come under the statute of 1830. I say indirectly sustained in the former case,

because the question was not directly before the court, and because Chief Justice BRONSON speaks doubtingly, and not in the positive and unequivocal manner which usually characterizes his opinions. After an attentive perusal, I think the doctrine cannot be said to have received his sanction. The vendee, by whom the action was instituted, had taken possession and made considerable payments, and, without restoring the possession or demanding payment, had brought suit to recover back the money paid, on the ground that the contract was void. I have already attempted to show that such a case is not within the statute. No reference is made to the language of the statute, and no notice taken of the difference between it and the English, or of the change wrought by the revision of 1830, and *Dowdle vs. Camp* is the only authority cited. The following language occurs in the opinion: " But when the vendee has received possession and paid a part of the price, the contract is not so utterly void that he can recover back the money just as though there had never been an agreement. If he can recover at all, so long as the vendor is not in the wrong, he must, at the least, first restore the possession, and then demand the repayment of the money. It is impossible to maintain that he can retain the possession and yet recall the money. And though he has never had the possession, nor any other benefit under the contract, yet as he did not part with his money as a loan, but as a payment, he cannot recover it back without first demanding it from the vendor and giving him notice that the contract is abandoned. When a man has paid money as due upon a contract to another, and there is no mistake, and no fraud or other wrong on the part of the receiver, there is no principle upon which it can be recovered back until after demand has been made."

In *Collier vs. Coates* there is an opinion of some length, and several authorities are cited. But the reasoning is entirely unsatisfactory to me, because the grand distinction between the various statutes is wholly lost sight of. The cases referred to arose under statutes the terms of which are very different, and hence they are quite inapplicable. It is assumed that there is no difference between the case of a ven-

dee in possession and one to whom possession has never been delivered. It is likewise assumed that there is a promise on the part of the vendor, which promise is declared to constitute a sufficient consideration for the money parted with. These and other like positions constitute the premises from which the conclusion is drawn.

But the change occasioned by the revision of 1830 has not escaped the observation of the courts of New York. It is noticed by the Chancellor in *Coles vs. Bowne*, 10 Paige, 536 ; in *McWhorter vs. McMahan*, id., 386, and in *Champlin vs. Parish*, 11 id., 410, and probably in several other instances. It is likewise clearly pointed out in *Miller vs. Pelletier*, 4 Edw. Ch. R., 102. The latter is also an authority directly favoring the right of the plaintiff to sue for and recover back the money paid. It was a bill of interpleader, and the question to be decided between the vendor and the vendee was as to which of them was entitled to a sum of money which the latter had paid upon a contract for the purchase of real estate declared void by the statute. It was shown that the vendor was able and anxious to complete the sale, and had executed and tendered the vendee a deed ; but the vice-chancellor said : "The contract must be deemed void, as the statute declares it to be. The subsequent execution and tender of the deed by the party does not remove the difficulty. This was not making the contract of sale, or the agreement for the sale to be made, as contemplated by the statute, but it was the intended fulfillment of the previously made supposed contract. If the deed had been accepted, then it would have been an executed contract, and all well enough ; but the purchaser had a right to repose, as he did, upon the statute, and to repudiate the transaction." It was accordingly decreed that the money be returned to him, with costs to be paid by the vendor. Upon this question, see also Comyn on Contracts, 424, and authorities there cited ; and *Ins. Co. vs. Kip*, 8 Cowen, 20 ; and *Munt vs. Stokes*, 4 T. R., 562.

But I have already said that the decision of this question is not strictly necessary to the determination of the present case. The record shows that in March, 1858, which was

some six months after the making of the supposed contract, the respondent agreed with the appellant to return him the money which he had received, or to give him a clear title to the lot, within two weeks from that time.    This agreement is established by the testimony of three disinterested witnesses, in addition to that of the appellant.   Against it there is no evidence except that given by the respondent, and it is not positively denied by him.   He did not make the title clear within the time specified ; and I suppose no one will dispute that the previous payment of the money upon the void but innocent agreement, formed a good moral or conscientious consideration for the promise to repay it.   Whatever doubt there may be about the appellant's right of recovery upon other grounds, upon this we say there is none.

The judgment of the circuit court must, therefore, be reversed, and the case remanded for further proceedings in accordance with this opinion.