FLORSHEIM and others, Respondents, vs. REINBERGER, Appellant.

*October 21, 1920—January 11, 1921.*

*Statute of frauds: Reformation of deeds: Mutual understandings intentionally omitted from deed: Restrictive easements: Enforcement: Equitable estoppel: Way of necessity: Right of owner of fee to maintain gates.*

1. A legal restriction on the use of lands conveyed must be in writing under sec. 2302, Stats., and a deed cannot be reformed to include a mutual understanding which was not to be inserted in the deed.
2. While courts of equity will, under some circumstances, imply and recognize restrictive equitable easements not recognized by courts of law in order to protect parties in the use of their property, and while such easements usually arise out of written covenants, yet this is not essential.
3. An agreement restricting the use of property which was not inserted in the deed will not be enforced as creating an equitable easement where there are no rights arising from acts or conditions long enjoyed and where the parties have made no improvements in reliance thereon nor acted on a scheme of improvement of adjacent property such as to arouse the court's equitable power by way of estoppel.
4. Where the record sustains a finding that a certain roadway is a private way over which defendant has only an easement by necessity, the defendant will be enjoined from removing, destroying, leaving open, or otherwise rendering useless, gates reasonably maintained thereon by plaintiff.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Reversed.*

This action was brought to reform a deed of real estate

purchased by defendant from plaintiff *Florsheim* and to permanently enjoin the defendant from using said real estate for other than private residential purposes. Plaintiff *Florsheim* claims that at the time of the sale of the real estate in question he and the defendant orally agreed that the real estate should be used for private purposes only, and that defendant would conform to and abide by a general scheme and plan of the plaintiffs to establish on their properties a "colony of friends," in which no summer resort was to be operated. The plaintiffs also seek to enjoin defendant from using a private road of plaintiff *Florsheim* other than as an easement by necessity, and to restrain him, his agents and servants, from removing, destroying, leaving open, or otherwise rendering useless, gates across this road.

The case was tried before the court. Judgment was entered permanently enjoining the use of defendant's property for other than private residential purposes, and enjoining and restraining defendant from removing, destroying, leaving open, or otherwise rendering useless, gates maintained by plaintiff *Florsheim* on this private road. This is an appeal from such judgment.

*E. D. Minahan* of Rhinelander, for the appellant.

*A. J. O'Melia* of Rhinelander, attorney, and *Carl B. Rix* of Milwaukee, of counsel, for the respondents.

The following opinion was filed November 16, 1920:

SIEBECKER, C. J. The court found "that on September 6, 1917, the plaintiff *Florsheim* purchased the property now owned by defendant, commonly known as the Darrow property, for the purpose of removing and getting rid of the public resort then being operated thereon and to bring the property within the scope and extent of the plan and scheme of the plaintiffs in the use of such property, and the said *Florsheim* was urged and requested by the other plaintiffs to make such purchase aforesaid;" that such Darrow property was thus made a part of this general plan and

scheme so mutually undertaken by plaintiffs; that the defendant was fully apprised of this arrangement and plan between plaintiffs; that *Florsheim* purchased the Darrow property for the purpose of having its use as a public resort changed to the use of residential property only and to make it a part of a scheme and plan of a "colony of friends" along the lake shore, upon which all the property of plaintiffs abutted; that defendant, when he purchased the Darrow property thereafter from *Florsheim,* orally agreed to abide by this plan and scheme of these adjoining property owners and agreed not to use the Darrow property for the purposes of a public resort and to devote it exclusively to private residential purposes and farming.

It appears that defendant, during the summer season of 1918, used the Darrow property he had so acquired for public resort purposes, contrary to such oral agreement entered into between him and *Florsheim* when it was deeded to him by *Florsheim* for a valuable consideration. The deed contains no covenants restricting the uses to which the property so conveyed is to be devoted, nor is there any reference to a plan or scheme that he and the plaintiffs were to use their properties for residential and farming purposes. The trial court correctly held that the facts do not justify a reformation of the deed conveying the Darrow property to defendant, *Reinberger,* by inserting a covenant restricting its use in conformity to the plan and scheme of devoting this and plaintiffs' property to residential and farm purposes. It is clearly shown there was no understanding between *Florsheim* and *Reinberger* that any restrictive covenant was to be inserted in the deed. On the contrary it appears that by a mutual understanding a restrictive covenant was not to be inserted in the deed. As a naked oral agreement it cannot be relied upon in an action of law because of its failure to conform with the requirements of sec. 2302, Stats., providing:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over

or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered or declared unless by act or operation of law or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same or by his lawful agent thereunto authorized by writing."

By the deed *Florsheim* parted with and conveyed to defendant all "the estate, right, title, interest, claim and demand whatsoever" which he had in the property in law and equity. No rights in and to real property, nor trust or powers over the same, can be granted by parol. *Rice v. Roberts,* 24 Wis. 461; *Clute v. Carr,* 20 Wis. 531; *Duinneen v. Rich,* 22 Wis. 550; *Brandeis v. Neustadtl,* 13 Wis. 142.

The court granted plaintiffs relief upon the grounds that the oral agreement among plaintiffs and the parol agreement between *Florsheim* and defendant to the effect that they all would devote their lake-shore property to residential and farm purposes, thus establishing a general plan and scheme for a friendly neighborhood of homes, and excluding the annoyances of a public resort adjacent thereto, created an equitable easement or servitude respecting these properties, and that equity would enforce this plan and scheme as a mutual right between these owners, upon the principles of estoppel. Among the cases relied on as authority to sustain this ruling are *Tallmadge v. East River Bank,* 26 N. Y. 105; *Lewis v. Gollner,* 129 N. Y. 227, 29 N. E. 81; *Hall v. Solomon,* 61 Conn. 476, 23 Atl. 876; *Doran v. Graham,* 195 Ill. App. 65; *Allen v. Detroit,* 167 Mich. 464, 133 N. W. 317.

From an examination of the foregoing cases and others cited to our attention it appears that courts of equity under some circumstances will imply and recognize an easement which is not recognized as such in courts of law. They are brought into existence under circumstances requiring their enforcement to protect parties in the use of their property.

"Their most prominent and frequent illustration is presented by the owner of a tract of land selling it off in separate

lots or parcels to different purchasers and inserting in the deeds, or otherwise imposing upon the vendees, stipulations as to the kinds of buildings which may be erected upon the property, or the trades or sorts of business which may be there carried on, or the uses in other respects to which it may be put." 1 Reeves, Real Prop. § 148.

It is declared that by reason of their character these easements are treated as negative equitable easements. They rest on mutual rights between landowners, and usually arise through the imposition of a general scheme or plan referred to, imposed by a common grantor or mutual grantors in the development and improvement of tracts of land. Though such easements usually arise out of written covenants, yet this is not an essential. Courts have enforced them when they rested in parol, as in the *Tallmadge* and other cases, where the owner of a tract of land had planned to erect houses according to a scheme which he exhibited to purchasers, assuring them they were to be erected and used as represented. Purchasers with notice thereof were held bound by such plan though not so specified in their deeds. In the case of *Allen v. Detroit,* 167 Mich. 464, 133 N. W. 317, and other cases relied on by the respondents, this equitable doctrine was applied under the varying facts and circumstances involved. These adjudications deal with cases where the right arose out of acts and conditions which had been enjoyed and existed for long periods of time and where the parties had improved their property in reliance thereon, and where the servitude was of a character showing that the owners had in fact acquiesced and acted on the scheme in improving property for its permanent enjoyment. The instant case lacks in all these features. There is nothing in the evidence to indicate that the parties intended to effect a change in the improvement of properties in reliance on this scheme or subject them to uses other than those enjoyed by the owners theretofore, aside from the fact that they purposed that the public use of the Darrow property was to be changed to a residential and farm purpose. The

evidence wholly fails to indicate anything in reference to the continuity or permanency of this so-called "colony of friends." This alleged right rests upon a mere parol arrangement for carrying it out. Obviously either of the parties could readily render it ineffectual by transferring his property to a third party without knowledge of such plan and thus terminate it as to all the other parties. This feature of the right thus asserted takes from it the character of permanency and impairs it as a valuable adjunct to the different properties of the plaintiffs. The whole scheme seems to have been conceived for the individual pleasure and benefit of the present occupants and fails to show that the parties had an intent that the restriction should become appurtenant to the property. These characteristics of the right as asserted by plaintiffs show it is not within the rule of the cases relied on to arouse the equitable power of the court by way of estoppel for its enforcement, and cannot be recognized to nullify the defendant's right to stand upon his deed and enjoy and use his property free from the burdens thus sought to be imposed on it by a parol agreement made contemporaneously with the conveyance of the property to him by an absolute deed in fee simple. Such a deed is a solemn instrument intended to recite definitely and fully any condition that attaches to the right, title, and interest in the land, and cannot be restricted in equity upon the facts and circumstances resting in parol as shown in this case.

The court found:

"There seems to be no doubt that the road extending from defendant's property eastward to where it unites with the public highway is a private way over which the plaintiff *Florsheim* has some dominion and across which he has a right to maintain reasonable gates. The defendant should be restrained from interfering with such reasonable maintenance of gates."

An examination of the record satisfies us that this finding is sustained by the evidence and that the part of the judg-

ment declaring said defendant and all other persons claiming or holding under him to be restrained from using such private way other than as an easement by necessity for the use of defendant's property, and to "be enjoined and restrained from removing, destroying, leaving open, or otherwise rendering useless, gates reasonably maintained by the plaintiff *Florsheim* on said private way running over and across his property through said lots 7 and 8 in an east and west direction," is proper and should be awarded, but that the other parts of the judgment are not justified by the record. The judgment must therefore be reversed, and the cause remanded to award judgment respecting the use of gates on the private way as heretofore indicated.

*By the Court.*—Judgment reversed, and cause remanded with directions to award judgment as indicated in this opinion.

A motion for a rehearing was denied, with $25 costs, on January 11, 1921.