LAUGHLIN, Appellant, vs. GOFF and another, Respondents.

*May 3—October 11, 1927.*

*Brokers: Sale of property to person deemed undesirable by owner:
Right of broker to commissions: Sale of substituted property:
Exclusive agency or listing agreement: Rights of purchaser:
Money paid to broker on account of purchase: Repayment if
owner repudiates sale: Estoppel: Payment of commission to
broker on sale of property reserved from listing.*

1. After an owner had recognized a real-estate broker's claim to a commission for the sale of a lot included in a subdivision, and had paid the commission without protest, the transaction was closed, and the owner could not, in the absence of mistake or fraud, assert, in an action against the broker for an accounting, that the original listing contract expressly reserved the sale of this particular lot to the owner himself. p. 556.

2. Where, on the owner's refusal to execute a deed to one of the lots sold, the broker and purchaser agreed to substitute a different and lower priced lot, the broker's commissions were fixed by the price of the lot substituted, not by the amount to be received from the lot first sold. p. 557.

3. Where the brokerage contract did not in any manner restrict the broker as to the persons to whom he might sell, he was entitled to a commission on finding a purchaser ready, able, and willing to purchase on the terms specified, though the owner claimed the purchaser was undesirable. p. 558.

4. A written agreement giving a broker the exclusive right to sell lots in a subdivision was a mere listing contract, under which the agent had no authority to enter into a written contract such as would bind his principal. p. 558.

5. The owner, having given the broker the exclusive right to sell lots in the subdivision, was entitled to recover the property as against a purchaser from the broker, where the principal, on learning of the sale, immediately repudiated it and refused to give a deed, despite the fact that the purchaser had made a deposit and taken possession of the property under an oral contract with the broker. (p. 559.) *On rehearing:* The owner, however, must pay the purchaser the amount credited to his account in a bank, although the purchaser had refused to accept repayment when the sale was first repudiated. p. 560.

6. The mere fact that a down payment has been made on property purchased is insufficient to take the contract out of the statute of frauds, and a purchaser from a broker is bound to take notice of the extent of the broker's authority. p. 559.

APPEAL from a judgment of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Affirmed in part; reversed in part, with directions.*

The plaintiff is the owner of a large tract of land abutting Namekagon Lake and other waters, and on or about the 21st day of June, 1921, entered into a written contract with the defendant *Goff,* under and pursuant to which this property was to be platted and placed upon the market for sale. *Goff's* right consisted of an exclusive right to sell the lots in the subdivision up to the 1st day of January, 1925. The contract also contained a provision reading as follows: "The narrow strip of land lying between Garden Lake and Jane's Bay is not to be included in the subdivision, *Laughlin* having reserved that for disposition by himself."

It appears that the defendant *Goff,* shortly thereafter, proceeded to plat the property and to sell lots in such plat. A minimum sale price was fixed by the agreement, and as and for compensation *Goff* was to receive one half of such sale- price. The action was brought against *Goff* for an accounting, and *Goff* counterclaimed for an amount alleged to be due him. The case was tried by the court without a jury, and the court found that the plaintiff had no cause of action against the defendant *Goff,* and ordered the complaint dismissed as to him. On *Goff's* counterclaim the

court found that he was entitled to judgment against the plaintiff for $215.25, with interest from November 1, 1924, and also awarded him costs and disbursements. Judgment having been entered accordingly, the plaintiff has prosecuted this appeal.

The action against the defendant *McBean* will be hereafter referred to in the opinion.

For the appellant there was a brief by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *Allan T. Pray.*

For the respondent *Goff* the cause was submitted on the brief of *Wm. F. Shea* of Ashland, and for the respondent *McBean* on that of *Kenneth Traeger* of Ashland.

The following opinion was filed June 20, 1927:

DOERFLER, J.   The court allowed the defendant *Goff* a commission of $275 upon the sale of lot 30, which is the narrow strip reserved in the contract for sale by the plaintiff. Through the efforts of *Goff,* one Weaver was procured as a purchaser of said lot, and as the result of negotiations such lot was sold to Weaver for the sum of $550. The evidence also discloses that the plaintiff waived his reservation to sell this lot himself, and consented that *Goff* make the sale. Plaintiff's counsel argue that, this being a transaction between an owner and an agent with respect to the sale of real estate, the agent cannot collect commissions on such sale, for the reason that the contract did not authorize the sale through the agency of the agent, but contained an express reservation for the plaintiff to sell this lot himself. In other words, the position of plaintiff's counsel is that *Goff* cannot collect a commission, there being an express contract which did not include the sale of lot 30.

It appears, however, clearly, from the evidence, that as the sale of lots proceeded, *Goff* notified the plaintiff that he had sold this lot and claimed commissions therefor. No protest as to such claim of commissions was made by the plaintiff, but on the contrary the evidence shows that *Goff's*

right to commission was expressly recognized by correspondence passing between the parties. The commission was subsequently paid by the plaintiff, and the transaction became a closed one, and was not challenged until subsequent to the rendition of an account by the defendant *Goff* to the plaintiff on or about October 10, 1924. There is no evidence of mistake or fraud. The transaction is therefore a closed one, and the plaintiff's claim is without merit.

In September, 1924, *Goff* negotiated a sale of lot 31 to one Schultz for the sum of $600. The plaintiff was notified of this sale and was requested. to execute a deed prepared by *Goff*. The sum of $150 was paid by Schultz on the purchase price, and the balance Schultz agreed to pay upon delivery of the deed. The plaintiff notified *Goff* that the Schultz deed could not be executed on account of the illness of his wife, and he also requested that *Goff* secure a land contract from Schultz. This Schultz refused to do, as he was ready, willing, and able to pay the entire purchase price in cash. Thereafter it was agreed between Schultz and *Goff* that lot 43 be substituted in place of lot 31, the consideration for lot 43 being $500. Plaintiff failed to execute a deed to Schultz, and the latter concluded to abandon the purchase of any lot, and demanded and received the sum of $150 originally paid down on the purchase of lot 31.

The court in the accounting action allowed *Goff* the sum of $300 commissions. Had the substitute agreement not been entered into, there can be no question but that *Goff* would have been entitled to $300 commission. However, he voluntarily consented to the substitution of a lower-priced lot; therefore his commissions must be fixed on the sale of such lot and not upon the sale of lot 31. This would result in a deduction of $50 from the amount allowed *Goff* in the judgment.

On June 19, 1923, *Goff* secured the defendant *McBean,* who agreed to purchase lot 35 for the sum of $150. The sum of $25 was paid down on said last named date, and a

receipt for such payment was executed and delivered.   On September 27, 1923, the balance of the purchase price for said lot was paid by *McBean* to *Goff*.   In the month of July, 1923, *McBean* took possession of lot 35 and built a small shack thereon, costing between $200 and $250, and has since occupied said premises.   When plaintiff's attention was called to the alleged sale of such lot to *McBean* he protested vigorously, claiming that *McBean* was not a desirable customer, and that his presence upon the subdivision would have a detrimental effect upon the other lots contained in the plat.   The sole negotiations with respect to the sale of lot 35 were had between *Goff* and *McBean*.

*Goff* then proceeded to cancel the alleged agreement with *McBean* and offered to return the money paid by him, but *McBean* insisted upon a conveyance and refused to accept the money.   Plaintiff in his complaint prays that *McBean* be barred from having or claiming any right, title, or interest in and to lot 35; and *McBean* in his counterclaim prays for specific performance.

The contract did not in any manner restrict *Goff* as to the persons to whom he might sell lots.   He was therefore fully justified in attempting to negotiate the sale to *McBean;* and having found *McBean,* who was ready, able, and willing to purchase this lot upon the terms provided for by the contract, *Goff* was entitled to his commissions.

However, by the written agreement, *Goff* was given the exclusive right *to sell* the lots in the subdivision.   This contract was therefore a mere listing contract, and authorized the agent to negotiate a sale.   Under such an agreement the agent could not enter into a written contract which would bind the principal.   In the case of *Grinde v. Chipman,* 175 Wis. 376, 185 N. W. 288, it is held:

"By the great weight of authority the words 'to sell' or 'to procure a purchaser' are synonymous terms when used in a real-estate brokerage contract or listing agreement.

(Numerous authorities cited.)    The authority conferred upon a broker by such an agreement which employs him 'to sell' does not authorize him either to execute a conveyance of the premises or to enter into an agreement to convey."

The decision in the *Grinde Case, supra,* is expressly affirmed in the recent case of *Klann v. Icke,* 192 Wis. 145, 212 N. W. 252.

The court found that the sum of $150 received from *McBean* was placed by *Goff* to the credit of the plaintiff in his bank at Ashland.

It is further claimed by plaintiff that the court erred in holding that *McBean* went into possession and made improvements thereon and is therefore entitled to specific performance of the oral contract.  *McBean* went into possession after having paid down the sum of $25.   It has heretofore been held in this opinion that *Goff* under his agreement could not bind the plaintiff, and it appears from the evidence that the plaintiff had no knowledge of this sale until after *McBean* had taken possession of the lot.   Upon obtaining knowledge of this alleged sale the plaintiff immediately repudiated the same and refused to execute a deed.   The mere fact that there was a payment down upon the property was not sufficient to take this case out of the statute of frauds.   *Brandeis v. Neustadtl,* 13 Wis. 142, 152. A purchaser under a contract like the one in question is in duty bound to take notice of the extent of the authority of the agent.    Therefore, *Goff* having the mere authority to secure purchasers, and having no authority whatever to bind the plaintiff, and the plaintiff having no knowledge of the alleged sale until after the payment of the $25 and after *McBean* had taken possession of the property, and *McBean* being in duty bound to ascertain the extent of *Goff's* authority, he acquired no title to the property or right of possession.

The judgment of the circuit court, therefore, decreeing specific performance as to lot 35 must be reversed.

*By the Court.*—The judgment in favor of the defendant *Goff* on his counterclaim is modified in accordance with this opinion, and as so modified is affirmed.

The judgment in favor of the defendant *McBean* on his counterclaim is reversed, and the lower court is directed to enter judgment in plaintiff's favor in accordance with the prayer of his complaint.

The defendant *Goff* is entitled to costs in plaintiff's action as to him; and the plaintiff is entitled to costs as against the defendant *McBean*.

The following opinion was filed October 11, 1927:

### On rehearing.

PER CURIAM.    It is conceded that the defendant *Goff* received the $150 paid by *McBean* on his lot, and this sum was deposited with the Northern National Bank to the credit of the plaintiff, of which deposit, however, the plaintiff had no knowledge.    When the plaintiff learned of the sale to *McBean* he promptly repudiated the same, and *Goff* tendered back to *McBean* the amount paid by him, which he refused to accept.

Plaintiff's action against *McBean* was one in equity, and, such being the case, the court should frame its decree in such a manner as to do full equity between all the parties.

The opinion and the mandate are therefore modified accordingly, the mandate, when so modified, to read as follows:

"The judgment of the lower court as to the action against *McBean* is hereby reversed, with directions to enter judgment in favor of the plaintiff, with costs, plaintiff to pay *McBean* the sum of $150, less the taxable costs in this court and the court below.    In the event that the plaintiff

shall fail to make payment as herein provided, judgment is ordered in favor of the defendant *McBean,* dismissing plaintiff's complaint with costs."

The opinion and mandate on the issues between the plaintiff and *Goff* remain undisturbed as in the original opinion. No costs are allowed to either party on this motion.