Bradley *et al. vs.* Saddler *et al.*

JEPTHA M. BRADLEY *et al.*, plaintiffs in error, *vs.* ANN D. SADDLER, by next friend, *et al.*, defendants in error.

1. Where a demurrer to the whole bill is overruled, or a plea stricken, the defendant may file his exceptions and have them certified and entered of record, and when the case is finally heard in the court below, and brought here for review, these exceptions will then be considered and passed upon.

2. A parol agreement, before marriage, to make and execute in writing a settlement after marriage, is within the statute of frauds.

3. Marriage is not such part performance of the parol agreement as will take the case out of the statute. No such construction should be put upon the statute as would render it absolutely nugatory.

4. The entry upon, and possession and enjoyment of, the wife's property by the husband, was not, in 1860, such part performance, unless averred and clearly proved to have been done in pursuance of, and subject to, the scheme of settlement agreed upon before marriage ; otherwise his marital rights attached, and the presumption would be that he possessed and enjoyed the property by virtue of those rights.

5. Although it be stipulated in a parol ante-nuptial agreement that the husband shall reduce it to writing after marriage, yet if he fail to do so, but nevertheless hold and use the wife's property as her separate estate during the greater part of the coverture, intending not to assert his marital rights, but to carry out the terms of the parol contract beneficial to the wife, other terms of which, prejudicial to her, have been executed, the writing may be altogether dispensed with, and its non-execution will be no bar in equity to the wife's title to the property so held by the husband as her separate estate.

6. In such case, although the statute of limitations would run against the wife as to her right to compel the husband to create written evidence of the contract, yet, until the husband asserts title to the property in himself and ceases to hold it as hers, the statute would not run against her equitable title to it, so as to bar a recovery of the property itself.

7. Nor, if the bill be so brought, will it abate by the death of the husband, but it will proceed against his representatives.

Bill of exceptions. Practice in the Supreme Court. Practice in the Superior Court. Husband and wife. Marriage

articles.   Statute of frauds.   Laws.   Construction of statutes.
Title.   Equity.   Statute of limitations.   Abatement.   Before
Judge POTTLE.   Hart Superior Court.   March Term, 1875.

Reported in the opinion.

J. D. MATHEWS; E. P. EDWARDS; J. H. SKELTON;
SAMUEL LUMPKIN, for plaintiffs in error.

McCAY & TRIPPE; ROBERT HESTER; F. B. HODGES;
G. NASH, for defendants.

JACKSON, Judge.

This is a bill brought by Mrs. Saddler and her children
against her husband James K. Saddler for the specific per-
formance of an ante-nuptial parol contract made in 1860.  The
bill alleges, in substance, that complainant was a widow with
two children, possessed of a considerable estate, real and per-
sonal, and that defendant agreed, if she would marry him,
"he would, at some convenient season, shortly after the mar-
riage, execute and deliver proper marriage articles, to convey
and make sure" the property to her and her children, after
the use thereof to himself for life; that thereupon she mar-
ried him; that immediately he left all his property and moved
to her house and took possession, by virtue of the contract, of
all her property; that he put her off from time to time on va-
rious pretexts, and finally a few months prior to the filing of
this bill, refused absolutely to carry out the contract, and
then, in 1873, she brought this bill to constrain him to exe-
cute his agreement.   To this bill the defendant demurred, on
the ground that there was no equity in it because the agree-
ment was within the statute of frauds.   The court overruled
the demurrer, and defendant excepted and had his exceptions
certified and entered of record, under sections 4250 and 4254
of the Code.

Shortly thereafter, the defendant died, and thereupon his
heirs-at-law, his children, were made parties defendant, by
consent, and they filed a plea in abatement, averring that the

suit abated on the death of defendant, complainant only having the lifetime of her husband, under the law, to enforce her right and make him execute the contract.   Complainant demurred to the plea, the court sustained the demurrer and ordered it stricken, and the defendant excepted as in case of the demurrer.

The case came on for final hearing before a jury, at the March term, 1875, of said court, and the jury found for the complainants.   A motion for a new trial was made which was heard by consent, at chambers, and overruled by the court, and defendants bring the case here, and assign for error the overruling the demurrer, the striking the plea, and the refusal to grant the new trial.

1. A motion was made in this court to strike from the bill of exceptions the assignment of error on the overruling the demurrer and striking the plea on the ground that both would have been final dispositions of the case, and should have been brought to this court, if excepted to, within thirty days after the adjournment of that term of the court when they were severally made; and this presents the first point for our adjudication.   We think section 4252 of the Code, which requires cases to be brought here within thirty days from the adjournment of the court at which the decision is made, should be construed *in pari materia* with sections 4250 and 4254, and taking all these sections together the meaning is, that cases *must* be brought to this court within thirty days after the final trial below, but in cases of demurrers overruled and pleas stricken in the previous stages of the cause, the party complaining *may* file his exceptions and have them certified and recorded, as in this case; and it is not too late to assign error upon them in the bill of exceptions duly brought to this court after the final hearing.   We, therefore, overrule this motion to strike these assignments of error and proceed to consider the whole case as it stands on its merits in the bill of exceptions.

2. The first question thus presented is this: Is a parol agreement, before marriage, to execute in writing a settlement after marriage, within the statute of frauds?   This agreement

having been made in 1860, before the adoption of our Code, must be considered in the light of the law as it then stood, and that statute was then in full force. What does it say? "No action shall be brought to charge any person upon any agreement made in consideration of marriage," unless the agreement, or some memorandum, or note, be in writing. This agreement is in parol, wholly so, every part of it, and is within the plain words of the act, and we have no power to take it out, because the party promised to put it in writing after the marriage. He made no note of such a promise—signed nothing, and charged himself wholly in parol: Cobb's Digest, 1127. The entire current of authorities seems to run in harmony with this line of thought. There are cases that where an effort is made to reduce to writing before marriage, · and the consummation is prevented by the fraud of the husband, the court will decree a specific performance; and so where a written contract is palmed off upon the wife other than what had been agreed upon, and what she supposed it to be, there, too, relief will be granted; but in these cases an effort is made to comply with the statute before marriage, and it is defeated. by the fraud of the party: Cookes *vs.* Marcall, 2 Vernon, 200; Montacute *vs.* Maxwell, 1 Equity Cases, 19; 1 Peere Williams, 618.

3. The next question presented is, is marriage such a part performance as will take the case out of the statute? We think not. If so, every case would be taken out and the statute be repealed and annulled by the courts; for no case can arise under the statute where the parties do not marry. Such would seem to be principle; and authority is equally strong: Story's Equity, 1 vol., 768; Throop on Verbal Agreements, 719 to 726; Hackney *vs.* Hackney, 8 Humphrey's, (Tennessee) 452; Dundas *vs.* Dutens, 1 Ves., Jun., 196, 199. It is true that Judge BENNING, in the case of *Durham vs. Taylor*, combats this view with his usual. power, but at last he concludes his argument, speaking, too, alone for himself, with a doubt whether marriage is not such a part performance. as takes the case out of the statute. The case itself turned

upon the question of reforming by parol proof a contract already in writing, and making it speak the intention of the parties, and to enforce it when corrected: *Durham and wife vs. Taylor*, 29 *Georgia*, 167.

4. But it is insisted for defendant in error that if marriage alone be not such part performance, marriage, accompanied with the possession of the wife's property, and the enjoyment thereof under the parol agreement, is such part performance as will relieve the case from the operation of the statute. This depends, in our judgment, upon the character of the possession, and for whom the husband held the property. In the absence of a full averment in the bill, and clear proof on the trial, that he held it in pursuance of, and subject to, the scheme of settlement agreed on, it is clear that the marital rights of the husband attaching to the wife's property on marriage, as they did at the time of this marriage, the presumption would be that he held her estate *as his own* by virtue of those rights. This presumption must be overcome by proof perfectly satisfactory to the jury, and the allegation to that effect in the bill should be distinct and unmistakable.

5. Again, if the bill clearly alleged the contract or agreement to be what some of the witnesses say it was, that Saddler, on the marriage, was to give all of his own property to his children, and to move to the house of his wife and manage her property for her and as her separate estate, he enjoying only the use thereof during his life; and if it be clearly established by proof that such was the agreement, and that he did give the whole of his property to his children, and did thus treat hers as her own during the greater part of the coverture, why may not the writing be altogether dispensed with and she recover in equity her separate estate so held by her husband? The wife certainly had an interest in the property of the husband she was about to marry. She was entitled to a support from him. His means to give her that support were diminished when he gave to his children all he had. Her right to dower upon his death was gone. This part of the contract, injurious to her, was fully executed;

and if it be true that he went into possession of hers, to hold for her and her children, with a mere usufruct in him for life, why is not her title in equity good to that for which she paid a valuable consideration to her husband on the marriage, by relinquishing all her rights, of every sort, to that property which, but for the agreement, he would have brought into the coverture? We think if these facts were clearly alleged in the bill, and proven on the trial, the non-execution of the writing would be no bar in equity to the wife's title to the property, so held by her husband, as her separate estate. Otherwise, certainly, the statute of frauds standing in the way of a court of equity, compelling him to put the agreement in writing, would enable him and his children to perpetrate a fraud upon her and her children that shocks the conscience of every good man.

6. Nor would the statute of limitations bar such suit by the wife. The four years statute might operate as a bar to her right to have the contract specifically performed and the writing executed, because she had the right to bring her bill to enforce the execution of the contract on his failure to do so at a convenient time shortly after the marriage, and certainly thirteen years was too long a time for her to wait. One year, it seems to us, would have been ample to test his sincerity. Whether her coverture would take such a case against the husband out of that statute of limitations is questionable. However that may be, the contract having been made prior to 1865, the broad act of 1869 would bar her effort to have him execute the writing; but if he went into the possession of her property and held it as her separate estate for her, his possession was hers, and she would not be required to sue for the property until he set up title in himself, and held adversely to her, which, upon her theory of the case, he never did until a short time before the bill was filed. Inasmuch, however, as the facts are not fully and clearly set out in the bill, nor such a prayer distinctly made for the relief herein indicated, and as, under the charge of the court, the jury did not pass upon the questions indicated in this opinion, but made

their verdict and decree on the issue of a specific performance of the verbal ante-nuptial agreement, we feel constrained to send the case back for a rehearing, that the issues herein indicated, if the parties see fit to amend, may be fairly passed, upon by the jury.

7. A bill so brought would not abate on the death of the husband. It would proceed against his representatives.

There is but one other point made in the case that need be noticed, and that is the seventh ground in the motion for a new trial, that the court expressed an opinion and argued the case to the jury. We do not see any violation of the Code in this charge. The question seems to have been fairly discussed and presented to the jury without an expression of opinion on the facts. But this and other immaterial assignments of error do not affect the merits of the case, and seem to have been abandoned by counsel, as they do not appear upon the brief. The judge gave to the case full and thorough consideration, and ruled the various questions which arose with marked clearness and ability; and while we differ with him on some points, which make it necessary under the pleadings for us to grant a new trial, in all probability, the practical result of his ruling and our own will be the same in the end.

Judgment reversed.