(90 App. Div. 176.)

## KRAMER v. KRAMER.

(Supreme Court, Appellate Division, First Department. January 15, 1904.)

1. MARRIAGE—ANTENUPTIAL CONTRACTS—EVIDENCE—SUFFICIENCY.

   Evidence that after plaintiff became engaged to marry, and before the marriage, she had conversations with her husband, as a result of which he agreed to give her $10,000, and other sums as he was able, but made no payment until after marriage, when he gave her defendant's note for $12,000, was sufficient to justify a finding of an agreement made in consideration of marriage, though the engagement subsisted before the agreement.

2. SAME—STATUTE OF FRAUDS—EXECUTED AGREEMENTS.

   Where a husband agreed, in consideration of marriage, to give his wife a sum of money, the agreement being void because oral, but after marriage gave to her a note of a third person in performance of the agreement, the contract thereby became executed, so that the statute of frauds had no application, and the husband could not afterwards invalidate his performance thereof.

3. STATUTE OF FRAUDS—PLEADING—NECESSITY.

   In order to be available as a defense, the statute of frauds must be pleaded.

4. BILLS AND NOTES—CONSIDERATION—OBLIGATION TO THIRD PERSON.

   Where defendant gave his note to his brother to enable the latter to perform an antenuptial agreement with his wife, and the brother deliv-

---

¶ 2. See Frauds, Statute of, vol. 23, Cent. Dig. §§ 4, 335.

ered the note to his wife for that purpose, defendant could not be heard
to say that the note was without consideration, but the wife, having
received it in discharge of the obligation, could enforce it irrespective of
the question of consideration between defendant and his brother.

**5. SAME—PRESUMPTION OF VALUE—BURDEN OF PROOF.**

Where a note recited value received, and ran directly to plaintiff, the
recital imported value as running from plaintiff to the maker, and the
burden was on the latter to show that he received no consideration
therefor.

**6. SAME—CONSIDERATION—QUESTION FOR JURY.**

Evidence examined, and *held* to make a case for the jury as to whether
a consideration for a note executed by defendant, at his brother's in-
stance, to plaintiff, passed between defendant and his brother.

**7. SAME—WITNESSES—CREDIBILITY.**

The credibility of the maker of a note in an action against him there-
on, when his testimony conflicted with recitals in the note, and the suc-
cess of his defense rested upon his testimony, which was much shaken,
was for the jury.

**8. SAME—DIVERSION FROM PURPOSE—EVIDENCE—QUESTION FOR JURY.**

Evidence examined, and *held* to make a case for the jury as to wheth-
er a note executed by defendant to his brother's wife was fraudulently
diverted from its purpose in being used for discharge of an antenuptial
agreement by defendant's brother, at whose instance it was given.

Appeal from Trial Term, New York County.

Action by Gertrude S. Kramer against Edwin G. Kramer. From
a judgment for defendant, and from an order denying a new trial,
plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

Wm. W. MacFarland, for appellant.
Daniel P. Hayes, for respondent.

HATCH, J. This action is brought to recover the amount secured
to be paid by a promissory note. The note reads:

"12,000.                                    Boston, April 18th, 1901.

"———— after date I or my estate promise to pay to the order of Gertrude
Short Kramer twelve thousand dollars, at 6% interest from date, at 474
Commonwealth Ave., Boston, Mass., value received, $12,000.
No. 1. Due ————.                              Edwin G. Kramer."

The defenses interposed by answer were that there was no consid-
eration for the note, and that the same had not been delivered to the
plaintiff, or, if delivered, that such delivery was in fraud of the rights
of the defendant, and in violation of the express condition and promise
upon which the said note was delivered, and that, therefore, the plain-
tiff was not a bona fide holder of the same, and was possessed of no
legal right to enforce payment thereof. Upon the trial the plaintiff
introduced the note in evidence, and rested. Thereupon the defend-
ant read in evidence the deposition of the plaintiff, taken pursuant to
an order of the Appellate Division (70 App. Div. 615, 74 N. Y. Supp.
1049). It was disclosed by this examination that the note in question
was delivered by Alfred E. Kramer to the plaintiff on the 6th day
of May, 1901, in a sealed envelope, upon the outside of which was
written: "This is the personal property of Gertrude Short Kramer, to

be delivered to her or myself only in case of necessity. A. E. K." The envelope was sealed with a white seal, and the letters "A. E. K." placed thereon. These letters and the indorsements were both in the handwriting of Alfred E. Kramer. When he delivered the envelope and note to the plaintiff he directed her to give it to her aunt to put in a safe deposit box. The plaintiff did as she was directed to do, and did not again see the envelope until August, 1901, when she procured the same from the safe deposit vault, made claim against the defendant for the amount to be paid thereby, and, he refusing to pay, she brought this action. It was admitted by the plaintiff that no consideration passed from her to her husband at the time of the delivery of the note to her, and that no consideration passed from her to the defendant at any time which was represented by the note in question. The defendant also introduced his deposition, taken before a commissioner, wherein he testified that he never received any consideration for the note from his brother Alfred E. Kramer; that he was not indebted to him in any amount, and that he signed and delivered the note to his brother some time after his marriage, upon the representation that he was in domestic trouble by reason of complaints and faultfindings by his family that he was without means or property, and had been subjected to such complaints for nearly a year; that he desired the note in order to exhibit it to the plaintiff for the purpose of showing that he was possessed of property; and that upon such representations, and with the understanding that the note was not to be delivered or pass from the possession of Alfred E. Kramer, but only to be exhibited, the defendant delivered it to him. After this testimony had been given the plaintiff was called as a witness in rebuttal, and testified that she became engaged to be married to Alfred E. Kramer in May, 1898, and that the engagement was consummated by marriage November 9th of the same year; that between the date of the engagement and the marriage she had a great many conversations with Alfred E. Kramer about giving her some property prior to the marriage; that the matter was talked over in the presence of the mother and aunt of the plaintiff. As a result of these conversations, Kramer agreed to give to the plaintiff $10,000, which was to be increased from time to time as he was thereafter able. No payment was made before marirage. After the marriage there were several conversations respecting the subject, as a result of which the note in question was delivered, and no further demand therefor was made by the plaintiff upon her husband for the fulfillment of the antenuptial agreement. Upon the former trial of this case, and in all substantial respects upon the same testimony, the trial court directed a verdict in favor of the plaintiff for the amount of the note with interest. Upon appeal to this court the judgment entered thereon was reversed and a new trial granted for errors committed in the reception of evidence. Kramer v. Kramer, 80 App. Div. 20, 80 N. Y. Supp. 184.

Upon the present trial, at the close of the case, the learned trial judge directed a verdict in favor of the defendant. This ruling proceeded upon the ground that there was no consideration for the note as between the plaintiff and the defendant, or between the defendant and Alfred E. Kramer, and that there was no consideration for the

note moving from the plaintiff to her husband. The latter holding seems to be based upon the ground that at the time when the agreement was made to give the plaintiff $10,000, and such additional sum as he was able, it was in consideration of the promise to marry, and that as such promise had already been given, and there was then a subsisting engagement by mutual promise, there was no consideration for it, and such promise being thereafter fulfilled by marriage, without further contract or condition, there was no consideration for anything. The court seems to have recognized that a contract for the payment of a sum of money or settlement upon the wife in consideration of marriage might be a binding contract, but that this was not such a contract; and, as there was no agreement in writing to pay the money in consideration of marriage, it was void by the statute of frauds. We are therefore to see if this ruling can be sustained.

There is an essential difference between a promise to marry and a contract made in consideration of marriage. A promise to marry is binding although verbal. A contract in consideration of marriage is void unless in writing, under the third subdivision of the statute of frauds. Specific performance may not be had of the promise to marry, and parties for a breach of such contract are relegated to an action for damages as the exclusive remedy. Valid contracts in consideration of marriage may be specifically enforced. Schouler's Domestic Relations, § 172 et seq. Marriage is among the highest considerations known to the law, and is sufficient in support of a voluntary settlement based upon it. Sterry v. Arden, 1 Johns. Ch. 261; Henry v. Henry, 27 Ohio St. 121. In Ayerst v. Jenkins, L. R. 16 Eq. Cas. 1873, p. 275, a settlement in consideration of marriage was upheld as against the personal representatives of the settlor, although the marriage under the laws of England was invalid. The law has always jealously guarded the rights secured to the wife by antenuptial agreements in consideration of marriage, and has safe-guarded the interests of the wife whenever it was possible in application of legal rules. It was said of such an agreement by Chancellor Kent:

"They usually proceed from the prudence and foresight of friends, or the warm and anxious affection of parents, and, if fairly made, they ought to be supported according to the true intent and meaning of the instrument by which they are created. A court of equity will carry the intention of these settlements into effect, and not permit the intention to be defeated. These general principles pervade the numerous and complicated cases on the subject." 2 Kent's Com. (10th Ed.) 165.

Such contracts have been supported, based upon very informal instruments, the court disregarding, so far as possible, external defects, if only the intention may be arrived at, and such intention and agreement has been gathered from letters and informal writings upon the subject, the contract drawn therefrom, and specific performance of the same awarded. Schouler on Domestic Relations, § 176 et seq., and cases cited. If the evidence justifies a finding of the existence of an agreement in consideration of marriage courts will support it. In the present case the evidence upon the part of the plaintiff is sufficient to justify the finding of an agreement made in consideration of marriage. The conversation relating thereto was after the engagement

of the parties to marry. It related to a consummation by marriage, and was therefore quite distinct and independent of the promise to marry. It was before the marriage that the agreement was made to pay the money, and such payment was based upon the proposed consummation of the parties' engagement to marry. The engagement itself was not mentioned as forming any part of the consideration, but the evidence was that upon marriage the plaintiff would give the specified sum. To hold that under such circumstances the consideration for the agreement to pay was the promise to marry would work a destruction of every antenuptial contract. In all of them the engagement to marry existed, and the language of the settlements on marriage recited in usual form, "Whereas, a marriage is intended to be solemnized between," etc., "Witnesseth that in further performance of said agreement and in consideration of the said intended marriage it is hereby agreed and declared," etc. Vaizey on Settlements, p. 108. In the present case the evidence shows a promise to marry, and then follows the agreement to pay, followed by the marriage; and if the jury found that this evidence was true they could not only find, but the irresistible conclusion would be, that the agreement to pay was based upon the consideration of marriage, and consequently, if it was properly evidenced, all the elements of a good promise in consideration of marriage would exist. It would scarcely be claimed that if the husband had executed and delivered to the wife his promissory note for the amount which he had agreed to give her as her property prior to the marriage, after the conditions had been discussed, and then marriage took place, the promissory note could not be enforced in the hands of the wife. Every element of a good contract in consideration of marriage would be present in such a case. So here every element of a good agreement was present if the evidence had been embodied in a writing and signed by the husband before marriage. The cases are abundant in support of such conclusion. Banfield v. Rumsey, 4 T. & C. 322; Wright v. Wright, 54 N. Y. 437; Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753. Nothing contained in Blanshan v. Russell, 32 App. Div. 103, 52 N. Y. Supp. 963, affirmed 161 N. Y. 629, 55 N. E. 1093, or in Cloyes v. Cloyes, 36 Hun, 145, is in conflict with this view.

In the first of these cases it appeared that the engagement of marriage was existing at the time the promise was made to give the note. A marriage was never consummated between the parties, nor was there evidence from which it could be inferred that the note was to be given in consideration of marriage. Under these circumstances, the court properly held that there was no consideration for the note, and that the mere existence of the engagement would not support an executory contract to pay money.

In the second case there was an attempt to enforce payment of a check, which had been given to the wife on the night of the marriage. There was no prior agreement to give it, the wife knew nothing about it, and did not see it until after the ceremony of marriage had been performed, and she testified that it was a surprise to her. The wife delivered the check to the defendant for safe-keeping. Differences having subsequently arisen between the parties, she brought action

to recover the amount of the check. The court held that a subsisting contract to marry was not a good consideration for the check, and that such agreement could not be enforced, unless a contract was made having for its basis the consideration of marriage, and this was not shown to exist; that the check could not be enforced as a gift, as it transferred nothing. We recognize the rule of these cases. The distinction, however, is plain; for here the evidence is sufficient to warrant the jury in finding that the note was given in consideration of marriage, based upon an agreement entered into after the engagement. We conclude, therefore, that the oral agreement, if established, followed by marriage, was sufficient upon which to found a promise to pay money by the husband to the wife; that it was made in consideration of marriage, and not of the promise to marry; and that the jury would be authorized so to find.

It is evident, however, that such contract was void by the statute of frauds, as it was not in writing. It was not illegal or immoral. On the contrary, it was a contract of the highest character, the enforcement of which is favored by the courts. There was therefore nothing which prevented the husband from subsequently recognizing the contract and performing it, either in accordance with its terms, or in such form and manner as the parties might agree. The testimony tends to show that after the marriage, and in fulfillment of the contract, the husband gave to the wife the promissory note in question. When this was done it became an executed contract and the statute of frauds has not the slightest application to such a case (Remington v. Palmer, 62 N. Y. 31; Murdock v. Gilchrist, 52 N. Y. 242), and, having been performed, it was beyond the power of the husband to recall his act. In Newman v. Nellis, 97 N. Y. 285, the court in speaking upon this subject said:

"But we know of no rule which prevents a party from performing a promise which could not be legally enforced, or which will permit a party, morally but not legally bound to do a certain act or thing, upon the act or thing being done to recall it to the prejudice of the promisee, on the plea that the promise, while still executory, could not, by reason of some technical rule of law, have been enforced by action."

The cases deciding this principle are numerous. Van Valkenburg v. Croffut, 15 Hun, 147; Browne on the Statute of Frauds, § 116 et seq., and cases cited; Wood on the Statute of Frauds, § 235, and cases cited; Pool v. Horner (Md.) 20 Atl. 1036.

In Lloyd v. Fulton, 91 U. S. 479, 23 L. Ed. 363, it was held that while a verbal promise by the husband, in consideration of marriage, to make a settlement upon the wife, was void under the statute of frauds, and a verbal promise made thereafter was also void, yet, as the settlement was voluntarily made after marriage, it was good as against the husband, and also good as against creditors in the absence of fraud.

In Hammersley v. Baron de Biel, 12 Clark & Finnelley's Reports 1845, p. 45, it was held by the chancellor that, although a parol agreement or settlement in consideration of marriage was void under the statute of frauds, yet that a subsequent written acknowledgment of the promise was sufficient to take it out of the statute. It is evi-

dent, therefore, that the delivery of the promissory note constituted a valid, executed agreement, based upon the consideration of marriage, and the note became as absolutely the property of the wife, as between herself and her husband, as though he had delivered to her the equivalent in money in fulfillment of the engagement he was under.

It is evident, however, that the question of the statute of frauds is not, in any view, in the case. In order to be available, it would be necessary for the defendant to plead it (Matthews v. Matthews, 154 N. Y. 288, 48 N. E. 531), and this he has not done. This brings us to a consideration as to whether the execution and delivery of a promissory note by a third person in discharge of the obligation of the husband furnished a good consideration therefor, so as to make the promisor therein liable for the amount agreed to be paid. It has been held many times that a promise to pay by a third person a given sum to a creditor, in consideration of the discharge of an indebtedness held by such creditor, or of a colorable claim asserted against the debtor, furnishes a good consideration for the promise of the third person, and it will be enforced by action. Becker v. Fischer, 13 App. Div. 555, 43 N. Y. Supp. 685; Stack v. Weatherwax (Sup.) 5 N. Y. Supp. 510; T. National Bank v. Parker, 130 N. Y. 415, 29 N. E. 1094; White v. Hoyt, 73 N. Y. 505. If, therefore, it be conceded that the defendant delivered the note for the purpose of enabling his brother to discharge the obligation which he recognized as existing in favor of the wife, and the note was delivered pursuant to such understanding, the defendant cannot be heard to say that there was no consideration for the note. Under such circumstances the reception of the note by the plaintiff in discharge of the obligation enabled her to enforce the contract, and it is immaterial in support of such right whether any consideration passed from the brother to the defendant for the note or not. The note itself recited that it was given for value received, and ran directly to the plaintiff. This recital, therefore, imported value as moving from the plaintiff to the defendant, and the burden rested upon the defendant to show that he received no consideration therefor. Strickland v. Henry, 175 N. Y. 372, 67 N. E. 611; Rector, etc., v. Teed, 120 N. Y. 583, 24 N. E. 1014. Assuming that this presumption was successfully met by the defendant when it appeared that the plaintiff in fact gave no value therefor to the defendant, yet, in view of the testimony, it became a question of fact as to whether or not there was not a good consideration for the note which moved from the brother to the defendant. It certainly is a departure from recognized business conduct for one person to execute and deliver to another his promissory note, reciting it to be for value received, when in fact there exists no consideration therefor, and it is not to be used for business purposes. It is disclosed by the testimony that there had been business dealings between the defendant and his brother in previous years, and that in the course of such dealings he had executed and delivered to him several notes representing an actual indebtedness, and that the business transactions between them covered a part of six or seven years, and that a settlement of such business dealings did not take place until May 1, 1900. It, of course, goes without saying that, if there was a consideration moving from the

brother to the defendant, it is sufficient to support the validity of the note in the hands of the plaintiff. That the note was given for a consideration is recited upon its face; that there had been notes for a valuable consideration moving from the brother in the course of their business transactions is conceded, and the brother is found in the possession of this note, conceded to have been voluntarily delivered by the defendant to him. The defendant is the party in interest, and the success of his defense rested upon his testimony. There was conflict between the testimony which he gave and the recital in the note. His evidence was much shaken. His interest, therefore, was of the highest character, and his credibility became under the evidence a question for the jury, and not one of law for the court to determine. Strickland v. Henry, supra; Volkmar v. Manhattan R. Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678; Eastland v. Clarke, 165 N. Y. 420, 59 N. E. 202.

It was further claimed by the defendant that the note was diverted from the purpose for which it was given, and that it was delivered to his brother upon the express understanding that it was to be used only for the purpose of exhibition to the plaintiff and her family, and was not to pass from the possession of the brother. While he so testified, he also testified that in March, 1901, his brother wrote him that he was coming to Boston to see him on business; that subsequently he came, and stated to the defendant: "I want to have you give me a note for a certain amount. * * * I must have a note. I want to give a note to my family. * * * He said to me, he didn't know of any one else to call upon, and called upon me to give him this note, and I foolishly did so. * * * I mailed it to him." If this testimony is to be believed, it establishes the fact that at the time when the application for the note was made it was stated that it was to be given to his family. It is quite true that other statements were made by the defendant contradicting this, and tending to sustain the averment of the answer that the note was diverted; but this, like the preceding point which we have considered, became, under the evidence, a question of fact for the jury to determine. The credibility of the defendant's testimony was for them, and they were authorized to accept this statement and reject the others, and find therefrom that defendant knew the purpose for which the note was to be given, and delivered it to be used for such purpose, and if they so found the right of the plaintiff to enforce the note, based upon such facts, is unimpeachable.

It follows from these views that the judgment and order should be reversed, and a new trial granted, costs to the appellant to abide the event. All concur.