ROWELL, Appellant, vs. BARBER, Executor, Respondent.

*February 4—April 5, 1910.*

*Husband and wife: Oral antenuptial agreement reduced to writing after marriage: Statute of frauds: Execution of contract: Consideration: Jointure or pecuniary provision barring dower, etc.: Election by widow: Laches: Estoppel.*

1. A written contract between husband and wife, reciting that the parties before their marriage, "having agreed to marry and intending to do so," made an agreement under which, "on account of such intended marriage and on account of the promises hereinbefore mentioned and hereinafter stated," certain real estate was to be settled upon the wife, and stating that other provisions of such agreement were made "on account of such intended marriage" and "by reason of such marriage of the parties," sufficiently shows that the oral agreement referred to was made upon consideration of marriage and hence was void under subd. 3, sec. 2307, Stats. (1898).

2. An oral antenuptial agreement, absolutely void under subd. 3, sec. 2307, Stats. (1898), cannot be validated by being reduced to writing and executed by the parties after marriage. Such a writing, though reciting the prior oral agreement, is merely a postnuptial contract.

3. Independent of the statute of frauds (subd. 3, sec. 2307, Stats. 1898) a jointure or pecuniary provision which shall operate to bar dower and all interest of a wife in the estate of her husband must, under secs. 2167–2170, 2172, Stats. (1898), be made, and be assented to by the wife in writing, before marriage. If not so made and assented to, the wife, after the husband's death, may elect to take the share of his estate provided for in sec. 2172.

4. An oral antenuptial agreement as to rights of the wife in the husband's property is not changed from an executory to an executed contract or taken out of the statute of frauds by the marriage.

5. The furnishing of support and maintenance by the husband to the wife cannot be considered as part performance of or consideration for such an agreement.

6. The execution by the husband of a conveyance of land to the wife in accordance with the terms of an oral antenuptial agreement which, after marriage, had been reduced to writing, and

the deposit of such conveyance in escrow to be delivered to the wife after the husband's death, was not such performance of the agreement as took it out of the statute of frauds.

7. The mere fact that after the death of the husband the wife assented to the recording of the conveyance above mentioned, took possession of the land, and collected some rents, did not preclude her, on the ground either of laches or estoppel, from afterwards, within the year limited therefor, electing to take the provision made for her by law, where she tendered back the title and possession of the land and the rents collected, and the estate had in no way changed its position because of her acts.

APPEAL from a judgment of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

On July 4, 1888, the plaintiff and one John S. Rowell were married. Afterwards and on the 19th day of April, 1892, the plaintiff and said Rowell entered into a contract in writing reciting therein that prior to their marriage they had made an oral antenuptial contract and setting forth said contract in the writing made and signed after their marriage. This contract set out in great detail all the alleged provisions of the oral antenuptial agreement and made the same a part of the agreement so made after marriage, which contract in writing was signed and sealed by said John S. Rowell and *Mary Rowell* on the 19th day of April, 1892, in the presence of two witnesses and acknowledged before a notary public. John S. Rowell died testate October 21, 1907, and recited in his will the antenuptial contract. The plaintiff duly filed her election October 10, 1908, to take the provision made for her by law instead of the provision made for her by will or the marriage settlement. Objections to said election were filed by the executor of the will of John S. Rowell, and such executor prayed that a hearing be had of the issues raised by the election and the objections thereto. The time and place of hearing were fixed and the issues heard in the county court and determined against the plaintiff. An appeal was taken and a trial had in the circuit court for Dodge county upon

the issues raised by the election and objections thereto, and the circuit court affirmed the judgment of the county court and adjudged that the plaintiff was entitled to take only the provisions made for her by the agreement of April 19, 1892, and the provisions made for her in the last will and testament of John S. Rowell, deceased, and no other part or share in his estate; and further adjudged that the plaintiff was not guilty of laches in the matter of filing her election, and that the written agreement made on the 19th day of April, 1892, is a valid antenuptial agreement and binding upon the plaintiff.    The plaintiff appealed from said judgment to this court.

*Geo. B. Swan,* attorney, and *R. B. Kirkland,* of counsel, for the appellant.

For the respondent there was a brief by *Burke & Lueck,* and oral argument by *T. E. Ryan* and *M. E. Burke.*

KERWIN, J.    The facts in this case are substantially undisputed.    The first and important question presented is whether the so-called antenuptial contract is void.    There is no dispute but that it was orally made before marriage and reduced to writing, signed, sealed, and acknowledged after marriage.    The contract purports to have been made in consideration of marriage, and the first question arises as to whether it is void under subd. 3, sec. 2307, Stats. (1898), which provides that every agreement, promise, or undertaking made upon consideration of marriage except mutual promises to marry shall be void unless the agreement or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party charged therewith. It is insisted by the appellant that an oral antenuptial contract is void under the statute referred to and cannot be validated by reducing it to writing and signing after marriage. This proposition is denied by respondent.    The question is not free from difficulty.    Nor are the authorities in the courts

of last resort in the different jurisdictions in harmony. The precise question appears never to have been passed upon by this court. Some point is made by respondent that there is a sufficient lawful consideration to support the contract independent of any consideration of marriage. But we shall spend no time in discussing this proposition, because from the four corners of the instrument we think it is clear that the consideration for the agreement was the promise by the plaintiff to marry John S. Rowell, deceased, which agreement could only be consummated and made valid, if at all, by the marriage. The contract recites:

"Whereas, the above-named John S. Rowell and the above-named *Mary Rowell,* now the wife of said John S. Rowell, then *Mary Schiller* and unmarried, having agreed to marry, and intending so to do, made an agreement as follows."

Then follow the terms of the agreement, which provides that "on account of such intended marriage, and on account of the promises and agreements hereinbefore mentioned and hereinafter stated," certain described real estate is agreed to be settled upon plaintiff. Other provisions of the agreement show that it was made in consideration of marriage by stating that such provisions were made "on account of such intended marriage" and "by reason of such marriage of said parties." It is therefore considered that the oral agreement made before marriage was made in consideration of marriage. *Mallory's Adm'rs v. Mallory's Adm'r,* 92 Ky. 316, 17 S. W. 737; *Henry v. Henry,* 27 Ohio St. 121. So we approach the question whether such oral agreement, entered into before marriage, by being reduced to writing and signed after marriage became a valid antenuptial contract. The obvious purpose of the written contract made after marriage, reciting the oral agreement made before marriage, was to remove from under the ban of the statute such oral agreement. It is plain that the written agreement relied upon as an antenuptial contract could have no force as such but for the oral

agreement made before marriage. It seems equally clear under our statute that the oral agreement was absolutely void. How a void agreement which has no vitality whatever can be brought into force and vigor by another agreement made by the parties after they are disqualified to make the one which is void is not easy to understand. If this can be done it is an easy way of avoiding the statute. If our statute were similar to the English statute of frauds and the statutes of the majority of the states which follow either literally or in substance the English statute, the proposition would be quite different. The English statute and those of most of the other states of the Union, except Wisconsin and New York, do not make the contract void, but provide that "no action shall be brought . . . to charge any person upon any agreement made upon consideration of marriage." Stat. 29 Car. II. c. 3 (1676), § 4. Or that "no action shall be brought in any of the following cases: . . . Third. To charge any person upon any agreement or promise made in consideration of marriage." Burns's R. S. Ind. 1901, § 6629 (4909). Or, "Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or his authorized agent: . . . (2) Those made in consideration of marriage." Iowa State Code, 1897, § 4625.

It will be seen from the foregoing, as well as the statutes of other states which might be cited, that there is a broad difference between our statutes and the statutes of most of the other states. This difference is vital, as was pointed out at an early day by this court. *Brandeis v. Neustadtl,* 13 Wis. 142. Under our statute the contract is made void, while under the other statutes referred to the remedy is suspended, or they make the evidence of such a contract incompetent. So there would be much reason in holding under the latter statutes that the contract being good at common law, though not in writing, and the statute operating upon the remedy

only or the character of the evidence necessary to establish such a contract, the evidence might be supplied by the parties after the making of the contract, which, though not void, was unenforceable for want of proper evidence. There is a very full discussion of the question by Chief Justice Dixon in *Brandeis v. Neustadtl, supra,* and the question has been several times considered by this court in later opinions. *Langley v. Sanborn,* 135 Wis. 178, 114 N. W. 787, and cases cited; *Popp v. Swanke,* 68 Wis. 364, 31 N. W. 916.

In *Brandeis v. Neustadtl, supra,* the court said (p. 149): "A contract declared void by statute is in all respects a nullity. It cannot for any purpose be considered as ever having had a being or existence." This being so, it is difficult to see how the oral antenuptial contract, void by the express provisions of the statute, could be converted into a valid antenuptial contract by a postnuptial agreement. Such a construction of the law would defeat the purpose of the statute.

In *Crane v. Gough,* 4 Md. 316, 332, the distinction is drawn between statutes which declare the contract void if not made in compliance with the statute of frauds and those which provide that no action shall be brought upon it.

It is true that in Iowa and Indiana it has been held that if, after making an oral antenuptial agreement, the parties after marriage reduce it to writing and in the writing recognize, put in force, and give effect to the prior oral agreement, the written contract will be given effect as an antenuptial contract though signed after marriage. But, as we have seen, the statutes of Iowa and Indiana on this subject are quite different from our own in the essential particular that they do not make the antenuptial oral agreement void, and we think the cases cited from Iowa and Indiana may be distinguished on that ground if upon no other. *Kohl v. Frederick,* 115 Iowa, 517, 88 N. W. 1055; *Buffington v. Buffington,* 151 Ind. 200, 51 N. E. 328; *Frazer v. Andrews,* 134

Iowa, 621, 112 N. W. 92. However, in Illinois, where the statute is practically the same as the English statute of frauds (Starr & Curtis, Ann. Stats. 2d ed. 1896, ch. 59, p. 1990), it was held that a verbal antenuptial agreement entered into, signed, and executed after marriage was void. *McAnnulty v. McAnnulty,* 120 Ill. 26, 11 N. E. 397.

In *Hunt v. Hunt,* 171 N. Y. 396, 64 N. E. 159, it was held under a statute similar to ours that an oral antenuptial contract is void, and that marriage in pursuance thereof is not such a part performance as will take it out of the operation of the statute of frauds. To the same effect are *Borst v. Corey,* 16 Barb. 136; *Bradley v. Saddler,* 54 Ga. 681; *Henry v. Henry,* 27 Ohio St. 121. It is true that the statute does not provide expressly when the note or memorandum shall be made and signed, and doubtless this might be done after the oral agreement was made and render such agreement valid where the relations of the parties had not changed and no rights intervened. Browne, Stat. of Frauds, § 224. But it seems plain that after the parties become disqualified to make an antenuptial contract they cannot by a postnuptial agreement infuse life into an oral antenuptial agreement which never before marriage had any legal existence. It is said in Browne on Statute of Frauds, § 224, speaking of the memorandum required by the statute of frauds: "The memorandum required by that section need not be contemporaneous with the making of the contract; it is only necessary that the evidence of the contract be put in that form, before any action can be maintained upon it,"—citing sec. 348 of the work, which does not appear to throw any light upon the particular question here. The statement in the text may have reference to statutes similar to the English statute of frauds when the contract is not void but the evidence of it is wanting, and which, if furnished before action brought, is sufficient; or the author may have had in mind cases where the relations of the parties or the subject matter had not so changed as to prevent completion of the contract. But in any event we

have been cited to no authority and have found none under a statute like ours which holds that an oral antenuptial agreement void under the statute of frauds can be validated by a postnuptial contract. Such a doctrine would in effect work a judicial repeal of the statute.

Other statutes respecting dower, jointure, and election further support the idea that the postnuptial agreement will not bear the construction contended for it by respondent, namely, that of an antenuptial contract. Secs. 2167, 2168, 2169, 2170, and 2172, Stats. (1898). Independent of the statute of frauds heretofore discussed, it is believed that the so-called antenuptial agreement cannot stand under the foregoing statutes respecting dower, jointure, pecuniary provision for intended wife, and election of widow. Sec. 2167 provides that a woman may bar all her dower in the lands of her husband by a jointure settled on her with her assent before marriage, providing such jointure consists of a freehold estate in lands for the life of the wife to take effect in possession or benefit before or immediately on the death of the husband. Sec. 2168 provides that such assent shall be expressed if the woman be of full age by her becoming a party to the conveyance by which it is settled, and, if she be under age, by her joining with her father or guardian in such conveyance. Sec. 2169 provides that any pecuniary provision that shall be made for the benefit of an intended wife and in lieu of dower shall, "if assented to as provided in the preceding section," bar her right of dower. Sec. 2170 provides that if any such jointure or pecuniary provision be made before marriage and without the assent of the intended wife, or if made after marriage, she shall make her election after the husband's death whether she will take such jointure or pecuniary provision or the share of his estate "hereinafter provided." Sec. 2171 provides that if any lands be devised to a woman, or other provision be made for her in the will of her husband, she shall make her election whether she will take the lands devised or the provision made or claim the

share of his estate provided in the following section, but shall not be entitled to both, unless it plainly appears by the will to have been so intended by the deceased; and sec. 2172 provides for making an election within one year after filing of petition for the appointment of administrator or for the probate of the will of the husband. These statutes clearly contemplate that the jointure or pecuniary provision therein provided for the wife which shall operate to bar dower and all interest in the property of the intended husband shall be made before marriage. The statutes were designed to provide not only for barring dower, but also all interest in the estate of the intended husband; hence provision is not only made for the jointure in bar of dower, but also pecuniary provision, and a valid antenuptial contract making pecuniary provision for an intended wife is valid and bars all her interest in the estate of her husband. *Deller v. Deller,* 141 Wis. 255, 124 N. W. 278.

As we have seen, the statutes provide in sec. 2167 for a jointure, and in sec. 2169 for pecuniary provision, in lieu of dower in each instance. Of course, it is perfectly plain that under secs. 2167 and 2168 the assent in case of jointure must be before marriage and in writing. And we think it equally plain that the assent in case of pecuniary provision under sec. 2169 must also be in writing and before marriage, because it provides that it must be assented to as provided in the preceding section. The alleged agreement here seems to partake of the nature of a jointure as well as a pecuniary provision, because it purports to settle real estate upon the plaintiff as well as make pecuniary provisions for the benefit of the intended wife. But whether the agreement be considered as a jointure settlement or pecuniary provision is not very material in this case, because it seems clear that under the statutes referred to the antenuptial agreement must be made and concluded before marriage and the assent provided for in the statute must be in writing and before marriage. *Fellers v. Fellers,* 54 Neb. 694, 74 N. W. 1077. Sec. 2170 seems in-

consistent with any other construction, because it provides that if such jointure or pecuniary provision be made before marriage and without the assent of the intended wife, or after marriage, she may make her election. Manifestly the assent to bar election contemplated by the statute either in case of jointure or pecuniary provision is assent before marriage given in the manner provided in secs. 2167 and 2168, Stats. (1898). The Wisconsin statutes referred to in express terms give the wife the right after the death of her husband to make her election whether she will take a jointure or pecuniary provision or take as heir under the statute. This applies to all jointures or pecuniary provisions made before marriage without the assent of the intended wife, and to all jointures or pecuniary provisions made after marriage whether assented to or not.

The pecuniary provision in question was, by reason of the statute of frauds of the state of Wisconsin heretofore discussed, a pecuniary provision made after marriage. It was not in any correct sense made before marriage and while it was absolutely void by reason of the statute of frauds. Sec. 2172, Stats. (1898), expressly provides that, when the widow shall be entitled to an election, upon making the same she succeeds to the same dower in lands of the deceased husband, the same right to the homestead, and the same share of the personal estate as if the husband had died intestate. There is no similar statute in Iowa or in Indiana, and the cases cited from these states to support the judgment below plainly go upon the ground that they are cases outside of the statute. There is by the Iowa statute no express election given to the wife to disregard any pecuniary provision made by jointure and to take as heir of the husband. The Indiana statute gives the following election to the wife (1 Burns's Ann. Stats. Ind. 1908, sec. 3042):

"If before her coverture, but without her assent, or if after her coverture, any such jointure or pecuniary provision shall be assured or given for her jointure, in lieu of her right to

one third of the lands of her husband, she shall make her election, within one year after the death of her husband, whether she will take such jointure or pecuniary provision, or whether she will retain her right to one third of the lands of her husband; but she shall not be entitled to both."

It will be observed that this statute relates only to the election of the wife to take in lieu of the jointure or pecuniary provision one third of the lands of her husband, and gives no other election to take as heir or to take any personal property; that it relates to a jointure or pecuniary provision assured or given in lieu of her right to one third of the lands of her husband, and not to a contract like that in the instant case. As to such contract, where the design is to cut the wife off from all interest of every kind in the estate of the husband, no election is given by the Indiana statute. Consequently the Indiana cases cited are treated as outside of the statute. The Wisconsin statute, however, gives the election to the widow generally as to all postnuptial contracts whether merely in lieu of dower or not, and as to some antenuptial contracts whether solely in lieu of dower or not.

Considerable stress is placed upon *Rieger v. Schaible,* 81 Neb. 33, 115 N. W. 560, by counsel for respondent. But we do not think the case is controlling. In that case it seems to have been conceded that a good antenuptial contract was made, but not in conformity with the jointure statute. It was held that the provision of the statute that a jointure barred dower did not ordinarily deprive the intended wife of the power to bar her dower by any other form of antenuptial contract. But the difficulty with the case before us is that there is no valid antenuptial contract of any kind; therefore, in the absence of such contract, the widow is not barred of her right of election. We therefore find it unnecessary to discuss a long line of authorities cited by respondent involving cases based upon valid antenuptial contracts, though not made in strict conformity to jointure

statutes, notably *Barth v. Lines,* 118 Ill. 374, 7 N. E. 679; *McGee v. McGee,* 91 Ill. 548; *Naill v. Maurer,* 25 Md. 532; *Logan v. Phillips,* 18 Mo. 22; *Stilley v. Folger,* 14 Ohio, 610.

Many cases are cited by respondent of property settlements carried out and executed, postnuptial contracts, as well as contracts while executory void under the statutes, but held good when executed; and it is argued that the agreement here had been executed, hence was valid and enforceable. This contention cannot be sustained. The marriage did not change the contract from an executory to an executed one as to the property relations under it. Agreements made before marriage respecting the property of the parties when executed by the transfer and delivery of the property may be good, though void under the statutes before execution. Also transfers and settlements after marriage may be good as postnuptial agreements. A few of the cases cited by respondent under this head will suffice to illustrate the difference between such cases and the one before us. In *Larsen v. Johnson,* 78 Wis. 300, 47 N. W. 615, the consideration of the contract was not the marriage of the parties, but the transfer of certain land by the intended wife to the intended husband, and such transfer was fully executed and the contract carried out on both sides, and it was held that the agreement, though not in writing, was fully executed and performed. It is said that, although the agreement to marry may have been made at the same time, it was no part of the consideration for the conveyance. 78 Wis. 306, 47 N. W. 615. *Goldsmith v. Darling,* 92 Wis. 363, 66 N. W. 397, does not seem to be in point. There it was held that while a written lease cannot be canceled by a parol agreement alone, an executed parol agreement to surrender will effect such cancellation. In *Andrews & Bros. v. Jones,* 10 Ala. 400, it is held that although a verbal contract made before marriage to convey property or make a settlement in consideration of marriage cannot be enforced, when executed it cannot be avoided

merely because the statute of frauds requires such contract to be in writing. To the same effect are *Hussey v. Castle,* 41 Cal. 239, and *Southerland v. Southerland's Adm'r,* 5 Bush, 591. In *Powell's Adm'r v. Meyers,* 23 Ky. Law Rep. 795, 64 S. W. 428, it was expressly held. that a parol antenuptial agreement could not be enforced because void under the statute of frauds, but that a written postnuptial agreement could be enforced against the husband after it had been fully executed. In *Crane v. Gough,* 4 Md. 316, it was held that a parol antenuptial agreement that the husband was to have the wife's notes and bonds and allow him the interest on them, if executed is valid and sufficient to enable the representatives of the husband to defend their possession of such bonds and notes. *Milner v. Harris,* 1 Neb. (Unofficial) 584, 95 N. W. 682, merely holds that an agreement which has been performed is not within the statute of frauds. In *Kramer v. Kramer,* 90 App. Div. 176, 86 N. Y. Supp. 129, there was an antenuptial contract void under the statute of frauds by which the husband agreed before marriage to pay the intended wife a certain amount of money; after the marriage. and in fulfilment of the contract the husband gave a note in payment of the amount in question, and the court held that when this was done it became an executed contract, and, having been performed, it was beyond the power of the husband to recall his act. *Satterthwaite v. Emley,* 4 N. J. Eq. 489, 43 Am. Dec. 618, was a case of settlement by a husband on his wife during coverture, and it was held good between the parties, though void as to creditors, and further held that recitals in the deed of settlement were not admissible to show an antenuptial agreement.

Further reference to this class of cases cited in respondent's brief is unnecessary. They merely state the well-recognized doctrine that where a contract void under the statute of frauds is executed it will be enforced. But the contract in the case before us was not executed. Marriage is not such a

part performance of an oral agreement as will take the case out of the statute. *Bradley v. Saddler,* 54 Ga. 681; Story,. Eq. Jur. § 768; *Hackney v. Hackney,* 8 Humph. 452; *Hunt v. Hunt,* 171 N. Y. 396, 64 N. E. 159. No property was transferred to the plaintiff during the life of John S. Rowell under the agreement. A deed of real estate was deposited in a bank to be delivered to plaintiff upon the death of her hus-band, so no title passed under this deed before his death. The agreement being only postnuptial, the plaintiff might accept the provision made therein or elect to take under the law. She elected to take under the law and not under the agreement. So there was no performance which would take the agreement out of the statute of frauds. A great many authorities are cited by respondent, all of which have been carefully examined by the court. With the exception of those from Iowa and Indiana they bear remotely only upon the vital questions in the case before us. The Iowa and Indiana decisions as well as the great majority of cases cited by respondent are from states having statutes upon the subject involved quite different from ours. But counsel for respondent cites us to *Reade v. Livingston,* 3 Johns. Ch. 481, as an authority in their favor in a state where the statute is similar to ours. After a careful examination of this case we are unable to see that it supports the contention of counsel. The syllabus states:

"A settlement after marriage, in pursuance of a parol agreement entered into before marriage, is not valid; *aliter,* if made in pursuance of a written agreement prior to the marriage.

"Though a settlement after marriage recites a parol agreement entered into before marriage, it seems that it is not, therefore, valid against creditors.

"A voluntary settlement, after marriage, by a person indebted at the time, is fraudulent and void against all such antecedent creditors; and that without regard to the amount of the existing debts, or the extent of the property settled, or the circumstances of the party."

The principal question considered in that case was whether the marriage settlement was void as to creditors. The creditor having died, the contest was between his representative and the husband and wife. The wife was not contesting the marriage settlement. Besides, the deed of settlement had been executed, and the question was whether it was fraudulent as to creditors. In the opinion several cases are cited where a settlement after marriage in pursuance of a prior parol agreement was held good; but it is said that these were cases prior to the statute of frauds.

It is further suggested in the case before us that the plaintiff waived her rights under the election statute, was guilty of laches, and is estopped from claiming under the law. This contention is based upon the facts that a few days after the death of Rowell the deed to plaintiff of the real estate mentioned in the agreement made after marriage was, with the consent of plaintiff, recorded, and that she took possession of the property described therein and collected some rent. But it also appears that plaintiff made her election under the statute in due time, and tendered back a conveyance of the real estate and also the rents collected. The furnishing of support and maintenance by the husband was no part performance and consideration for the agreement. This he was obliged to do by virtue of the marriage. The law requires a husband to support and provide for his wife. Such requirement is grounded upon principles of public policy, and the husband cannot shirk it even by contract with his wife. *Ryan v. Dockery,* 134 Wis. 431, 114 N. W. 820. The plaintiff had a year to determine whether she would elect, and we find nothing in the record which prevented her from so doing when she did elect. The mere fact that she consented to the recording of the deed, or rather did not object when it was suggested by the person in whose hands it was that it be recorded, especially when she recalled it without practically any delay, did not amount to an election of the provisions of

the agreement. Her rights ought not to be cut off by a mere slip of that kind, when the law gave her a year to determine. The facts in the case do not warrant the conclusion that the plaintiff is bound by the transfer under the contract, nor the rent collected; but, on the contrary, she still had the right of election. *Beem v. Kimberly,* 72 Wis. 343, 39 N. W. 542; *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571; *Green Bay & M. C. Co. v. Hewitt,* 62 Wis. 316, 21 N. W. 216, 22 N. W. 588; *Wis. M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1. Nor was any ground of estoppel shown. The estate in no way changed its position because of any act of plaintiff in allowing the deed to be recorded or in receiving rents. As said by this court in *McDougald v. New Richmond R. M. Co.* 125 Wis. 121, at page 132 (103 N. W. 244, 248):

"One of the prime essentials to using equity jurisdiction to estop one because of his conduct from insisting upon his legal rights as to another, is a change of position by such other, reasonably relying upon such conduct so that he would be prejudiced if a change of attitude upon the part of that one were given effect." *Likens v. Likens,* 136 Wis. 321, 117 N. W. 799.

The court below found upon sufficient evidence that there was no laches on the part of plaintiff in the matter of filing her election.

It is contended by counsel for appellant that any other construction of the statutes than that the assent to the agreement must be in writing and before marriage would open the door to fraud, while on the part of respondent it is said that no fraud appears in this case, and that no harm will be done by enforcing the oral agreement made before marriage and reduced to writing afterwards, because all the terms were well understood and agreed upon. The difficulty with this argument is that courts have no power to disregard the plain mandate of a valid statute merely because in some cases it may work hardship. The policy of the statute is a legis-

lative and not a judicial one. If it were necessary to inquire into the wisdom of the legislature in passing the statute, many cogent reasons might be found in favor of its strict enforcement.

It follows from what has been said that the oral antenuptial agreement was void, and that the contract made after marriage, though reciting the prior oral one, simply amounted to a postnuptial contract, that the plaintiff was not guilty of laches, nor was she estopped from making her election, and therefore the judgment below must be reversed.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to the circuit court to reverse the judgment of the county court, and for further proceedings according to law.