Estate of Simonson, 164 Wis. 590.

Estate of Simonson: Simonson, Respondent, vs. Bergum, Administrator, Appellant.

*December 5, 1916—January 16, 1917.*

*Husband and wife: Obligation of husband: Employment by wife before and after marriage: Right to compensation: Evidence: Claim for money advanced.*

1. The law requires the husband to support and provide for his wife, and he cannot shirk such requirement even by an express contract with her.

2. Evidence which would be sufficient to support a finding of a contract between a man and woman for services and compensation before they were married would not necessarily be sufficient to support a finding that such a contract was made after their marriage.

3. A wife may lawfully employ her husband as agent or servant in the management of her separate property; but where such contract would necessarily include much which the husband is required by law to do for his wife without compensation there should be, to entitle him to compensation, a very substantial showing of such an agreement.

4. The evidence in this case is *held* insufficient to support a finding that there was an express contract of employment between husband and wife, before their marriage, sufficiently definite as to the compensation he was to receive so that it can now be enforced by him against her estate.

5. It appearing that, whatever the agreement as to compensation was, the parties thereto afterwards made a settlement or adjustment of their differences, there can be no finding of an implied contract that the husband was to receive the reasonable value of his services.

6. The evidence is also *held* insufficient to show the making of a new contract, after marriage, that the services of the husband were to be compensated as if he were still a hired man.

7. The husband in such case having asserted, before and during the marriage and after the wife's death, the right to possession of certain personal property on the ground that he advanced the money for its purchase, and having, both before and after the wife's death, disposed of some of such property for his own benefit, he cannot recover from the wife's estate the money so advanced.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from a judgment in favor of *Ed. Simonson* as claimant against the estate of said deceased.

In 1903 the deceased, Martha Simonson, then the widow of Peter Olson, who died intestate, with her children occupied a farm of about 200 acres in Columbia county theretofore owned by said Olson. About forty acres were under cultivation and twenty-five acres in hay and pasture. Tobacco, corn, oats, and potatoes were raised, milch cows, sheep, and hogs were kept, and two or three horses were used. In April, 1903, the claimant, *Ed. Simonson,* went to work on the farm and assisted in taking care of the same until 1914. During a part of the period a son of the deceased, Martin, helped to some extent. At the time the claimant went there he had $400, which was expended in buying horses and harnesses and machinery, and the personal property so purchased was used on the farm during the eleven succeeding years. The deceased handled practically all the money from the sale of the products of the farm and, under the testimony, paid the claimant not to exceed $25 per year. The two were married in May, 1907, and lived together as husband and wife until the spring of 1914. At that time the deceased left and started a divorce proceeding which was not disposed of at the time of her death in December, 1914.

The claimant testified that he expected to be paid the same as a hired man during all these years both before and after marriage and expected the $400 back that he had advanced for the purchase of personal property. After the deceased left the farm in the spring of 1914 the claimant sold some of the cattle, hogs, and sheep for about $325 and retained the money, and after the appraisal of the estate of the deceased *Simonson* claimed the machinery as against the estate and took the horses away from the administrator and sold

them and kept the money and gave away the harnesses.    He testified that the two horses and two colts taken by him were worth about $200.

The claimant demanded from the estate a yearly salary of $400, starting in 1903 and running to and including 1913, upon which was allowed an annual credit of $25, and also the $400 claimed to have been advanced in 1903, making a total of his claim of $4,675 without computing interest.    In the hearing in the county court the claim was entirely disallowed.

On appeal to the circuit court the case was submitted to the jury.    They rendered a general verdict in favor of claimant for $1,215.24, upon which judgment was rendered in favor of the claimant, and from which judgment appeal is taken to this court.

The cause was submitted for the appellant on the brief of *Nelson & Bushnell,* and for the respondent on that of *Henry A. Gunderson.*

ESCHWEILER, J.    The claimant in this case relies upon testimony in the nature of admissions made by the deceased as a support for the verdict in his favor.    One Ferdinand Voth, a former sheriff and a justice of the peace, testified that early in 1907 the deceased came to him as such justice of the peace with a complaint against *Simonson.*    That the two came into court and something was said between them about their property rights, about the money brought to the farm and as to the salary earned while on the farm.    After a conference they settled their differences.    In response to inquiries from the witness the deceased said she owed *Simonson* money and wanted to pay it, and she produced $80. Claimant said he would not take it, he wanted the $500, and that deceased then said she owed him $500 and would pay him later; that he did not remember anything being said about wages, but that it was said that *Simonson* had the $500

when he came there. That they came back in May, 1907, and were married by this justice. That she then repeated the same thing about *Simonson* being paid for his work and that they had gotten the money matters fixed up.

One Ulverstadt was present at the interview between the parties at the same time with Mr. Voth. His recollection of the conversation was that there had been trouble between them and deceased wanted *Simonson* to leave the place. *Simonson* said he would if he could have his money. She presented $80 which he refused, saying he wanted $500 for his work and that he was going to claim some horses. She then said that, not having money enough, she supposed whatever she had to pay she would pay, that he would get his pay after she was gone. Subsequent to the marriage Ulverstadt had conversations with the deceased in which she sometimes said *Simonson* did not have anything coming, and sometimes that he ought to have some pay for his work.

A son of the deceased, Martin Olson, who was twenty-one at the time of the trial, was called as a witness on behalf of the claimant and testified that he did not hear his mother say anything about how *Simonson* should be paid and that he never heard his mother say that *Simonson* brought money to the farm when he came there. It appeared, however, that in February, 1915, a year before the trial, he came to the office of claimant's attorney and was questioned and the questions and answers taken down in shorthand and written out and the same received in evidence at the trial, and that at the same time he made an affidavit; the substance of the examination and affidavit being that he knew *Simonson* had been a good, faithful worker on the farm during the eleven years and that everything he had earned during the time had gone into the place, and that he, Martin, had frequently heard his mother tell *Simonson* that he, *Simonson*, would get pay for all his work that he did there, and the money he spent there,

out of the property of the estate after she was dead; that he,. Martin, thought *Simonson's* services were reasonably worth $300 per year besides the little clothing and spending money he received while there. Thus his testimony is contradict- ory, indefinite, and of very little value.

The only testimony that can be considered in the nature of indicating any express agreement between the claimant and the deceased was that given by Voth and Ulverstadt, and the principal part of that related to a time prior to the marriage and is also very indefinite.

It appears furthermore that the farm so occupied by the parties belonged to the children of the deceased Peter Olson, and was not, therefore, the estate of the deceased except as to her dower and homestead rights and any interest secured by the mortgage of $2,000 she held against the farm.

Upon the assuming of the relationship of husband and wife the law requires the husband to support and provide for his wife, such requirement being grounded upon principles of public policy, and the husband cannot shirk it even by an express contract with his wife. *Rowell v. Barber,* 142 Wis. 304, 318, 125 N. W. 937; *Ryan v. Dockery,* 134 Wis. 431,. 114 N. W. 820; *Perkinson v. Clarke,* 135 Wis. 584, 591, 116 N. W. 229.

Manifestly the moment the marital relation is assumed the position of the parties in matters of this kind becomes substantially different from that existing prior thereto, and what might be considered sufficient to support a finding of a contract between the two for services and compensation there- for before marriage would not necessarily be sufficient to sup- port a finding of such a contract subsequent to marriage.

While it is true that the wife may lawfully employ her husband as agent or servant in the management of her sep- arate property, yet where, as here, such contract would neces- sarily include so much of that which the husband is required

by law to do for his wife without compensation, there ought to be a very substantial showing of any such agreement subsequent to marriage.

We are satisfied, therefore, from the entire testimony and the surrounding circumstances, that there is not enough in the record to support a finding that there was an express agreement sufficiently definite so that it can be now enforced between these parties prior to the marriage as to what that compensation should be. Furthermore, it appears that at this conference they made some settlement or adjustment of their differences, but what that new contract of settlement was does not appear. This showing that there was an express contract between them takes away any basis for a finding on the theory of an implied contract to pay the reasonable value of such services, for this would be to make a new contract for them.

We are also satisfied that there is a want of sufficient evidence in the record to establish the making of a new contract after marriage between them that the services of the husband were to be compensated as though he were still a hired man, and this especially so as to services rendered in the improvement of and on the farm of his stepchildren, who were then incapacitated from making any such a contract.

It appears that claimant did invest or loan to deceased to be invested in personal property $400 when he went there in 1903. It further appears, however, from claimant's own testimony that he asserted the right to take possession of certain of the personal property on the theory and claim that it was his by reason of his having advanced the money to purchase the same. This assertion was made before the marriage in 1907, during the marriage, and finally, after his wife's death, when he took some of the horses away from the administrator of the estate. He disposed of some of this property before and after his wife's death and pocketed the

proceeds. This position so taken is the exact opposite of that he is now forced to take in order to be reimbursed for this amount from the estate. He cannot be permitted to occupy the two positions, and his claim based upon the $400 used in 1903 must also be disallowed.

*By the Court.*—The judgment of the circuit court is reversed, and the action remanded to the circuit court with directions to affirm the judgment of the county court.